## Case No. 1,700.

### BOURNE et al. v. MAYBIN.

[3 Woods, 724.][1]

Circuit Court, S. D. Mississippi. Nov. Term, 1877.

GUARDIAN AND WARD — CONCLUSIVENESS OF GUARDIAN'S ACCOUNTS — FAILURE TO ACCOUNT AFTER WARD'S MAJORITY—REMEDY OF WARD—COLLATERAL REMEDY — FILING CLAIM AGAINST BANKRUPT GUARDIAN—EFFECT OF—ALLOWANCE OF—PARENT AND CHILD — SUPPORT OF CHILD—LIABILITY OF CHILD'S ESTATE FOR — ESTATES—LIFE TENANT AND REMAINDER-MAN—CONTRIBUTION—TRUSTS—APPROPRIATION OF TRUST ESTATE BY TRUSTEE — LIABILITY OF GUARDIAN FOR INTEREST.

1. In Mississippi a ward is not concluded by the annual accounts of the guardian, filed and passed upon without notice to the probate court, during the infancy of the ward.

2. In that state, upon the filing of his final account by a guardian, his inventory and annual accounts and his whole administration of the trust are subject to challenge and examination.

3. The Code of Mississippi, which declares that when a ward arrives at the age of twen-

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

ty-one or is married, the guardianship shall cease, and the guardian shall deliver up to the ward, or the husband, as the case may require, all the property of the ward in his hands, and on failure to do so, shall be liable to an action on his bond, creates the relation of creditor and debtor between the ward and guardian on the failure of the guardian to comply with the requirements of the statute.

4. The fact that the accounts of a guardian with his ward were in course of settlement in the probate court, does not preclude the ward from proving her claim against the guardian in the probate court.

5. B commenced in a state chancery court a suit against her late guardian, after his adjudication in bankruptcy, for a final settlement of his guardianship, and obtained a decree against him for the amount of the trust estate found in his hands, but the assignee was not a party to the suit: *Held* (a), that the claim of the ward against the bankrupt estate was not merged in the decree of the chancery court, but was a provable claim against the bankrupt estate; (b) and that the assignee was not bound by the amount found by the chancery court, nor would the bankrupt be bound by the allowance of the claim by the bankrupt court.

6. Suit brought and judgment recovered against a bankrupt on a fiduciary debt which the bankrupt does not discharge, does not preclude the creditor from proving the debt as a claim against the bankrupt estate.

7. The general rule is: that if a father be guardian of his child, he must support the child, if of sufficient ability to do so.

8. But it is within the discretion of the court to allow one who is guardian of his own child compensation for the support of the ward out of the ward's estate.

9. The general rule in equity is, that where land is charged with a burden, every portion of the estate should bear its share of such charge.

10. So, where the incumbrance is on the entire estate and there is a tenant for life, he is bound to keep down the interest, but not to pay any part of the principal.

11. A tenant by the curtesy who happens to be guardian for the remainder man cannot apply his ward's estate to remove the incumbrance from the property in which he holds by the curtesy, and charge his ward with both the principal and interest so paid.

12. The rule of contribution in such cases stated.

13. A guardian who filed neither inventory nor account, but used his ward's estate as if it were his own, is bound to pay interest on the value of the estate, and there is nothing in the Code of Mississippi to relieve him from this obligation.

14. A trustee is bound to keep clear, accurate and distinct accounts—otherwise all presumptions are against him, and all obscurities and doubts are to be taken adversely to him.

15. A trustee who, previous to the late war of the Rebellion, appropriated the trust estate to his own use, is liable for interest thereon during the period of the war.

In bankruptcy. Appeal from [an unreported] decree of the district court, allowing claim of Mary L. Bourne against bankrupt estate. [Decree affirmed.]

On December 30, 1868, Joseph W. Maybin was adjudged a bankrupt. On January 24, 1877, the bankrupt estate being still unsettled, Mary L. Bourne, with Joshua W. Bourne, her husband, filed for allowance a claim against the bankrupt estate for the sum of $30,000. The claim was presented in the form of a petition, which set forth the facts upon which it was based, and prayed that the assignee of the bankrupt might be made a party, and that an account might be stated of the amount due to petitioner from the bankrupt estate. The petition contained the averments required by section 5077, Rev. St., for the proof of a demand against a bankrupt estate, and was verified by the affidavit of Mary L. Bourne and Joshua W. Bourne, her husband. The petition was answered by the assignee, who denied any indebtedness from the bankrupt to said Mary L. Bourne, claimed that the accounts between said Mary L. Bourne and the bankrupt had been settled by the probate court of Warren county, Mississippi, and that nothing was due her from the said Joseph W. Maybin, and pleaded the limitation of three, six, and ten years, prescribed by the Code of Mississippi. Upon the issues thus raised voluminous proofs were taken, and a reference was made to a master, who stated an account, and reported that there was due the said Mary L. Bourne from the said bankrupt estate the sum of $30,492.95. Exceptions were filed to the report, which were overruled, and the report was confirmed, and the district court declared and decreed that on the 24th day of January, 1877, the date of the declaration of a dividend to other creditors of said bankrupt estate, there was due to the said Mary L. Bourne from the bankrupt estate of said Joseph W. Maybin the said sum of $30,492.95, and allowed the same as a proven claim against the said estate. From this decree the assignee took an appeal to this court.

The claim of Mary L. Bourne against the estate of Maybin arose, as she claimed, from certain property received by Maybin as her guardian. Maybin was the father of Mrs. Bourne, who, by the death of her mother on February 22, 1851, inherited, as she claimed, a number of slaves and other personal property. On September 26, 1851, Maybin was appointed guardian for his daughter, the said Mary L., and received, as such, her estate. The law in force at that time (Rev. Code Miss. 1857, art. 146) required a guardian, "within three months after his appointment, to return to the probate court, under oath, a true and perfect inventory of all the estate, real and personal, and an appraisement thereof and of all money or other things which he may have received, or taken possession of, as the property of his ward." The law also declared, "he shall, annually, return an inventory, under oath, of the increase of the estate, if there be any, by the birth of slaves or the increase of other property, and he shall, in like manner, report all losses by death or otherwise." Article 147 declared: "Such guardian shall, at least once in every year, and oftener if required, exhibit his ac-

counts, showing the receipts and disbursements of money on account of his ward, supported by proper vouchers, in which he shall also show the annual product of the estate under his management, and the sale and disposition of such product. His accounts shall also state his expenditures in maintaining his ward," etc. Maybin filed no inventory of the property which came into his hands, as required by law, nor did he file any accounts. In August, 1861, he was cited by the probate court to file his inventory and accounts. In response to this citation, he filed an answer, in which he stated that about ten years before he had been appointed guardian of the person and property of his said daughter, that he owned a large estate in his own right, and had but two children, and the property owned by his said ward was but a small portion of what he expected to give her. "Hence your respondent," the answer proceeded, "has never felt that it was necessary to return an inventory of her estate or property, or keep or render any accurate and detailed account of the receipts and disbursements of her property, or for or on her account." The answer further stated that the ward of the respondent was the owner of the undivided half of certain slaves, naming them, nineteen in number, five of whom had been born since his appointment as guardian, and that these slaves were all the property which had come to the hands of respondent as such guardian. The answer further stated, that for about six years last past, respondent had employed a private tutor for his ward, at an expense of from $450 to $500 per annum, and that in the future the expense of her support and education "would exceed the annual hire of the said half of said negroes." The answer, thereupon, prayed the appointment of appraisers to make and return an inventory of the property of the ward, and to assess the annual hire thereof during the time it had been in respondent's hands, and that to save respondent the trouble of keeping a detailed account of disbursements for his said ward, her support and education might be set off against the hire of her negroes.

In pursuance of the prayer of this answer, the probate court appointed three appraisers, who appraised the hire of twelve negroes, from 1851 to 1861, at $600 per annum, amounting, in the aggregate, to $6,000, from which they deducted $1,000 for expenses of negro children, leaving a balance due, for the hire of the slaves of the ward, for the period aforesaid, of $5,000. This report was confirmed by the probate court. Upon the coming in of this report, Maybin filed a statement of his account for the preceding ten years. The debit side of the account contained but one item for hire of slaves from 1851 to 1861, $5,000, and the credit side two items, one of $5,000, amount allowed by probate court for the years 1851 to 1861, inclusive, and amount paid court fees, $14.50,

showing a balance due the guardian of $14.50. This account, thus stated, was approved by the probate court. Maybin never filed any further account. On the 5th day of April, 1866, in response to a citation from the probate court, he filed an answer in which he stated, that the only property of his ward which had at any time come into his hands as guardian, consisted of negroes, and he knew of no other property of his said ward; that as a result of the war, etc., this property had been destroyed; that by an agreement with the probate court in 1861, it was understood that the hire of her slaves should be appropriated to the support and education of his ward; that the hire, after that date, was not sufficient for that purpose, and that he, therefore, had no property or effects of his said ward in his hands. Upon this answer the probate court declared that "the same is hereby allowed, confirmed and ordered to be recorded, and it is further ordered that the said guardian be discharged from further accounting to this court until citation shall issue requiring him to do so." No citation had ever been issued, and no further account had ever been filed by said guardian. On the 10th of October, 1867, said ward was married to her present husband, the said Joshua W. Bourne.

G. Gordon Adam and Frederick Speed, for petitioner.
W. B. Pittman and A. B. Pittman, contra.

WOODS, Circuit Judge. The defense of the statute of limitations set up in the answer cannot prevail. The evidence shows that the petitioner was married to her present husband while an infant. She has, therefore, from her birth been under the disability of either infancy or coverture, either of which suspends the statute of limitation under the Code of Mississippi: Code 1857, art. 12, § 2, c. 57, p. 400, and Code 1871, § 2156. Nor is the petitioner concluded by the accounts as they are styled, filed in the probate court by Maybin, as guardian, and the action of the court thereon. Both were filed during the infancy and before the marriage of the ward, and were passed upon without any notice to her. Neither of them are final accounts, but are expressly stated to be annual accounts. Such accounts are not conclusive on the ward. The Code of 1857, art. 148, c. 60, provides for a final account by the guardian after his trust has ceased, either by the marriage or majority of the ward. "And the guardian shall also make a final settlement of his guardianship by making out and presenting to the court, under oath, his final account, which shall contain a distinct statement of all the balances of his annual accounts, either as debits and credits, and also all other disbursements, charges and amounts received and not contained in any previous annual account." The Code then proceeds to declare that such account shall be open to

the inspection of the ward, and the court shall fix a day for hearing the same, and shall cause notice thereof to be given to the ward to appear and show cause why the final account of the guardian should not be allowed and approved. At the appointed time the court shall proceed to examine the final account and to hear the proofs for and against it, "and if the court shall be satisfied, after full examination, that the account is just and true, it shall make a final decree of approval, ratifying and confirming the guardianship, or it may allow only so much of the account as seems right," etc. These provisions make it perfectly clear that, on the filing of a final account, the whole administration of the trust and all the annual accounts and the inventories are subject to challenge and examination. The absurdity of binding an infant by an annual or partial account, passed upon by the probate court without notice, finds no place in the jurisprudence of this state, and so the supreme court of the state has repeatedly held: Austin v. Lamar, 1 Cushm. 189; Harper v. Archer, 9 Smedes & M. 71; Coffin v. Bramlett, 42 Miss. 194.

It is next contended by the defendant that the claim of the petitioner is not of such a nature as to be provable against the bankrupt estate; that only debts, and debts which were in existence at the date of the bankruptcy, can be proven; and that, as between guardian and ward, the relation of debtor and creditor does not exist until there has been a final accounting in the probate court, and a balance found due the ward. If this proposition were true, then the claim of every ward or other beneficiary of a trust whose guardian or trustee was adjudged a bankrupt before settlement of the trust, would be excluded from participation in the proceeds of the bankrupt estate. A conclusive answer, however, to this theory of the defense is found in the Code of Mississippi, which declares (Code 1857, art. 148, c. 60, p. 462) that "the powers and duties of every testamentary or other guardian over the person and estate of his ward shall cease and be determined when such ward shall arrive at the age of twenty-one years, or be lawfully married, and in either event the guardian shall forthwith deliver up to the ward or to the husband, as the case may require, all the property of every description of said ward in his hands, and on failure shall be liable to an action on his bond." Clearly, this provision of the Code raises the relation of debtor and creditor between guardian and his late ward as soon as the guardianship ceases. Mrs. Bourne was married and the powers of the guardian, as such, ceased more than a year before the bankruptcy of the latter, and he was liable to suit in any court of competent jurisdiction for the recovery of the amount which might be due from him to his ward. The relation of debtor and creditor must, therefore, have existed between them as soon as the guardianship was terminated by the marriage of the ward.

Another objection to the proof of the petitioner's claim, similar to the one just considered, is that the debt of the petitioner is not a provable one, because her claim is pending and undetermined in a court, to wit, the probate court, which has full jurisdiction thereof. We think this objection is fully answered by the case of Payne v. Hook, 7 Wall. [74 U. S.] 425. In that case, Anne Payne, a citizen of Virginia, filed her bill in the circuit court of the United States against Hook, public administrator of Calloway county, Missouri, and the sureties on his bond, to obtain her distributive share in the estate of her brother Fielding Curtis. The bill charged gross misconduct on the part of the administrator and false settlements with the probate court, and it appeared from the bill that Hook had not yet made his final settlement with the probate court. The bill was demurred to because, among other grounds, the probate court had exclusive jurisdiction concerning the duties and accounts of administrators until final settlement, and the administration complained of was still in progress, and resort should be had to that court to correct the accounts of the administrator, if fraudulent or erroneous. In reply to this objection to the bill, the supreme court said: "The circuit court of the United States for the district of Missouri had jurisdiction to hear and determine this controversy, notwithstanding the peculiar structure of the Missouri probate system, and was bound to exercise it." "The equity jurisdiction conferred on the federal courts is the same that the high court of chancery in England possesses, is subject to neither limitation or restraint by state legislation, and is uniform throughout the different states of the Union." These remarks apply with pertinency to the jurisdiction of the bankrupt court, and to the facts of this case. The jurisdiction of the bankrupt court depends upon the act of congress. It cannot be controlled or limited by state legislation. It is uniform, and is required by the constitution to be uniform throughout all the states. Section 711 of the U. S. Revised Statutes declares, "that the jurisdiction vested in the courts of the United States of all matters and proceedings in bankruptcy, shall be exclusive of the courts of the several states," and section 4972, "that the jurisdiction conferred upon the district courts, as courts of bankruptcy, shall extend to all cases and controversies arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy." Section 5106 declares, "that no creditor whose debt is provable shall be allowed to prosecute to final judgment, any suit at law or in equity therefor against the bankrupt, until the question of the debtor's discharge shall have been determined, * * * provided, that if

the amount due the creditor is in dispute the suit may, by leave of the court in bankruptcy, proceed to judgment for the purpose of ascertaining the amount due." These citations from the statutes clearly show the jurisdiction of the bankrupt court to ascertain the amount of a claim against the bankrupt estate, and the fact that the claim may be in suit in another court does not divest it of that jurisdiction. It is true, that the bankrupt court could not arrest a suit brought against the debtor to recover a debt which the bankruptcy would not discharge, but it clearly has the jurisdiction to ascertain for itself the amount of the debt, where it is called on to apply towards its payment a part of the assets of the bankrupt estate. Where a bankrupt is liable for unliquidated damages arising out of any contract or promise, or on account of any goods wrongfully taken, converted or withheld, the court may cause such damages to be assessed in such mode as it may deem best, and the sum so assessed may be proved against the estate: Rev. St. § 5067. It seems clear, then, that the petitioner had a provable debt against the estate, for immediately on her marriage she might have maintained a suit against her guardian, upon his bond, in any court of competent jurisdiction, to recover whatever might be due her from him, and the fact that the probate court had jurisdiction to ascertain the amount did not oust the jurisdiction of the bankrupt court to do the same thing.

It is next objected to the claim of petitioner, that in November, 1869, she commenced a suit against her late guardian Maybin, in the chancery court of Warren county, Mississippi, for a final settlement of his guardianship, and, on April 22, 1873, obtained a decree against him for $20,609, and it is claimed that the debt being merged in the decree, neither the decree, nor the original debt on which it was founded, can be proven against the bankrupt estate. Many authorities are cited to show that the debt or claim on which a judgment is based is merged in the judgment. This is, of course, the general doctrine, and is not disputed. The rule of merger is that no further action can be prosecuted between the same parties upon a matter already ripened into judgment. There is no offer in this case to establish the debt by proof of the decree against Maybin, rendered by the state court. The proof offered is evidence to establish the claim upon which that decree was founded. Can this be admitted? I think it clear that the claim presented against the bankrupt estate is not merged in the decree against the bankrupt. The decree is against the bankrupt, founded on a fiduciary debt which his bankruptcy does not discharge. The claim sought to be established in this case, is a claim against the estate of the bankrupt. There can be no merger unless both the bankrupt and the assignee are concluded by the decree of the state court. It is clear that the assignee is not concluded, for he was not a party to the decree. As to him the proceedings and decree of the state court were res inter alios acta. When the decree is presented as a claim against the bankrupt estate, he clearly has the right to contest it, and insist that he is not bound by it, and to require the creditor to make good his claim by proof. He can not be bound by a decree to which he was not a party. So, neither is the bankrupt, in a suit brought against him to recover the amount of a fiduciary debt which is not discharged by the bankruptcy, bound by the allowance of the claim by the bankrupt court. So far as such a debt is concerned, the assignee in no degree represents the bankrupt, and when suit is brought against the latter to establish the claim against him, and to be enforced against his subsequently acquired property, he may well say, I have had no day in court on this claim, and insist on his right to contest. The great majority of claims against a bankrupt estate are not contested; they are allowed upon the ex parte proof of the creditor. To say that such an allowance would be binding upon the bankrupt, in a suit brought to recover a fiduciary debt not discharged by the bankruptcy, seems clearly untenable. The decree in the state court against the bankrupt, and the allowance of the claim for the sum demanded by the bankrupt court, are entirely independent of each other. They are proceedings instituted for different purposes, and against different parties. The doctrine of merger does not apply. The bankrupt is not bound by the allowance of the claim by the bankrupt court, and the assignee is not bound by the decree of the state court. It is true that there are authorities of the highest respectability which have held that, if after the institution of proceedings in bankruptcy, judgment is recovered on a provable debt, the original debt is merged and extinguished in the judgment, and the judgment is not provable against the estate of the debtor, nor discharged by the certificate: Bradford v. Rice, 102 Mass. 472; Cutter v. Evans, 115 Mass. 27; In re Gallison [Case No. 5,203]; In re Mansfield [Case No. 9,049]; Holbrook v. Foss, 27 Me. 441; Pike v. McDonald, 32 Me. 418; Sampson v. Clark, 2 Cush. 173. These decisions are placed on the doctrine of merger, which we have seen does not apply here, and because the creditor, by taking judgment and so changing the form of the debt and securing to himself the benefit of conclusive and permanent evidence of it, and an extension of the period of limitation thereon, is held on his part to have elected to look to the debtor personally and to abandon his right to prove against the estate, and the debtor, on the other hand, who might have protected himself by moving the court in which the action was pending for a continuance, in

order to afford him an opportunity to obtain and plead a certificate of discharge, is held, by omitting to make such a motion before judgment, to have waived the right to set up his certificate against the plaintiff's claim, and, therefore, the rights of the parties must be governed by the judgment which one has moved for and the other has suffered to be rendered. It is evident that these reasons do not apply to a claim based on a fiduciary debt which is not discharged by the bankrupt act. The bankrupt law expressly provides (Rev. St. § 5117) that "no debt created by the bankrupt * * * while acting in a fiduciary capacity shall be discharged by proceedings in bankruptcy, but the debt may be proved and the dividend thereon shall be a payment on account of such debt." Here seems to be a clear authority to such a creditor to pursue both remedies, to prove his debt and to prosecute his action against the bankrupt. And in New Lamp Chimney Co. v. Ansonia Brass & Copper Co.,· 91 U. S. 656, it was held that proof of a debt not barred by the bankruptcy does not preclude an action against the bankrupt thereon, and the converse seems to follow inevitably that suit brought against the bankrupt does not preclude proof of such a debt against the bankrupt estate. It cannot, therefore, be said that, by electing to pursue one remedy, he abandons the other, when the law gives him both. Nor can it be said that the debtor, by not interposing his discharge as a defense to the action against him, waives his right to set up his certificate against the plaintiff's claim, for he has no such right, and therefore cannot be said to waive it. On the other hand, the weight of authority seems to be in favor of the proposition that the taking of judgment by a creditor pending proceedings in bankruptcy, does not prevent the plaintiff in any case from proving his claim: Clark v. Rowling, 3 N. Y. 216; Monroe v. Upton, 50 N. Y. 593; Harrington v. McNaughton, 20 Vt. 293; Downer v. Rowell, 26 Vt. 397; In re Brown [Case No. 1,975]; In re Vickery [Id. 16,930]; In re Stevens [Id. 13,391]; In re Rosey [Id. 12,066]. But whichever way the authorities may preponderate on this question, no case can be found which decides that a judgment after bankruptcy, on a debt not barred by the bankruptcy, precludes proof of the claim in the bankrupt court.

My conclusions are, therefore, (1) that the decree rendered against Maybin after his adjudication upon a fiduciary debt which is not barred by the bankruptcy, does not bar the proof of the claim in the bankrupt court; and (2), that the claim of the creditor against the bankrupt estate is not merged in the decree in his favor against the bankrupt; and (3), that as the assignee was not a party to the decree against the bankrupt, he is not concluded by it, and may insist that the creditor shall prove his claim by other evidence than the record of the decree, and as the assignee has insisted on such proof in this case it was properly offered and received. These conclusions being reached, it only remains to consider whether the report of the master, finding the amount of the claim in favor of the petitioner to be $30,492.95, should be sustained. Upon this finding three questions of law arise: 1. Whether Maybin should be credited with any payments made by him for the support and education of his ward, she being his daughter; and 2. Maybin being a tenant by the curtesy of certain lands, the fee of which was in his ward, and having made certain payments to discharge a mortgage incumbrance thereon, what credit should he be allowed for such payments in his accounts with his ward. 3. Whether Maybin should have been charged with interest on any balances which might be found in his hands.

Of these three questions in their order:

1. The evidence shows that Maybin, during the greater part of the time while he was guardian for his ward, was a man of large means. The general rule is, that if a father be guardian, he must support his child, if of sufficient ability to do so: Reeves, Dom. Rel. 283. It is, however, within the discretion of the court to allow the father who is guardian a sum out of his ward's estate in payment of his support of the ward. It appears from the record that the probate court, in 1861, consented to allow Maybin his expenditures in behalf of his ward out of her estate. Although the safe and proper course for the guardian would have been to obtain the consent of the court to this arrangement in advance, yet the court having sanctioned the expenditure after it was made, I am of opinion that Maybin should be allowed all the expenditures in behalf of his ward which the testimony satisfactorily establishes. Maybin's own testimony on this subject is loose and unsatisfactory. He produces no vouchers and gives no dates. In my judgment, the only money expended for his ward which he proves is a payment of $500, made to his ward's grandfather in her behalf. This payment is corroborated by the witness Brian, otherwise I should not consider it as satisfactorily proven. I think, therefore, that Maybin should be allowed a credit for $500, as of the 31st day of December, 1857, the latest date to which the testimony of the witness Brian could apply. No other payments are shown by Maybin to have been made on behalf of the ward, and no other credits ought to be allowed him by reason of alleged expenditures in her behalf.

2. The evidence shows that Maybin was the tenant by the curtesy in a tract of land of which his daughter and ward was seized in fee. At the time Maybin's life estate commenced he was about twenty-three years of age. Within a year or two after the inception of said life estate, Maybin, as reported by the commissioner, paid to relieve said real

estate of a mortgage incumbrance left upon it by the ancestor of his ward the sum of $9,250, to which the commissioner added interest in the sum of $11,402.95, making the principal and interest $20,652.95. Half of this sum, to wit, $10,326.47, the commissioner allowed as a credit to Maybin. His counsel claims that he is entitled to a credit for the whole sum, principal and interest. It is true that the personal property is the primary fund for the payment of the debts of a decedent's estate, and that in general the heir of a mortgagor or the devisee of his real estate may call upon the executor or administrator to discharge the mortgage on the real out of the personal estate, and this rule is extended to a widow in favor of her dower in an estate mortgaged to secure the purchase money: Crabb, Real Prop. 914; Cope v. Cope, 2 Salk. 449; Brown, Max. 560; Henagan v. Harllee, 10 Rich. Eq. 285; Cumberland v. Codrington, 3 Johns. Ch. 229. But the principle is adopted in favor of the heir devisee and doweress alone (Coote, Mortg. 467, 468; Cope v. Cope, supra; Torr's Estate, 2 Rawle, 250; Mansell's Estate, 1 Pars. Eq. Cas. 367), and has no application to the respective rights of the remainder man and tenant for life or for years. The general rule in equity is, that where land is charged with a burden, each portion of the estate should bear its equal share of such charge: Stevens v. Cooper, 1 Johns. Ch. 425; Story, Eq. Jur. § 477; Cheeseborough v. Millard, 1 Johns. Ch. 409; Gibson v. Crehore. 5 Pick. 145. Where the incumbrance is on the entire estate, and there is a tenant for life, he is bound to keep down the interest, but not to pay any part of the principal. If, for example, there is a tenant for life and a remainder man in fee of an estate, subject to a mortgage which is due and must be paid at once to save foreclosure, and the remainder man, to save the estate, pays the mortgage, he is not obliged to take the share of the tenant for life in annual installments of interest, to continue as long as he shall live. He is entitled, as equitable assignee of the mortgagee, to immediate payment, and the sum which he thus has a right to claim is the present worth of an annuity equal to the amount the annual interest would be, computed for the number of years which the tenant will live. This is assumed by the courts to be fixed for this purpose by the tables of longevity. Whatever this sum may amount to is deducted from the gross amount paid for redemption, and the balance is the proportion to be paid by the remainder man. Of course the same rule of computation is applied if the tenant redeems and calls on the remainder man for contribution: 2 Washb. Real Prop. 197; Swaine v. Perine, 5 Johns. Ch. 482; Gibson v. Crehore, 5 Pick. 145; Houghton v. Hapgood, 13 Pick. 154; Squire v. Compton, 2 Eq. Cas. Abr. 387; Foster v. Hilliard [Case No. 4,972]; Carll v. Butman, 7 Me. 102, 105; Jones v. Sherrard,

2 Dev. & B. Eq. 179. This is the rule applicable to this case. The proposition that a tenant by the curtesy, who happens to be the guardian of the remainder man, can apply his ward's estate to remove an incumbrance from the property in which he holds by the curtesy, and charge his ward with both the principal and interest of the sum so paid, is entirely without foundation, and has no support in any adjudicated case. Applying the rule above laid down, to ascertain what portion of the $9,250 paid by Maybin to remove the incumbrance on the land in which he held a life estate he was bound to contribute, and taking his age at the time of payment to be twenty-three years, and computing interest at six per cent., the rate fixed by law in this state, it turns out that Maybin's proportion of the sum paid was $5,772, and his ward's portion $3,478. For this latter sum, with interest from the date of its payment, Maybin is entitled to a credit. As the commissioner has allowed a sum considerably larger than this, he cannot complain.

3. It is next to be considered whether Maybin was chargeable with interest upon the amounts realized from the estate of his ward. The general rule on this subject is thus laid down in Perry on Trusts. "If a trustee retains balances in his hands which he ought to have invested, or delays for an unreasonable time to invest, or if he mingles the money with his own, or uses it in his private business, or neglects to settle his account for a long time, he will be liable to pay simple interest at the legal rate:" Volume 1, § 468. The report of the commissioner shows that Maybin received slaves of his ward, in September, 1851, whose clear yearly hire amounted to $1,325, and other personal property of the gross value of $4,350. Maybin's report, filed in August, 1861, shows that up to that time he had filed neither inventory nor account, but had used his ward's property as if it were his own, and employed it in his own business. Under this state of facts he is clearly liable for interest on the hire of the slaves as it accrued from year to year, and for the interest on the value of the other personal property, unless relieved by the law of this state. The Code of Mississippi of 1857, pages 461, 462, provides (after requiring the guardian to file annual accounts) as follows: "And for no balance of money in his hands on such accounts, shall a guardian be charged with interest, but the court may direct him to place the same at interest." It is perfectly apparent that this provision was not intended to apply to a case like the present. Here the guardian, who is in receipt of a yearly income from the estate of his ward, files neither inventory nor account for ten years, and then makes a grossly false statement of the condition of his ward's estate, giving no detailed account of the assets of his ward, or of his expenditures in her behalf, falsely

stating the amount of her property at less than one-half what it really was, and giving a palpably false and exaggerated statement of his expenditures in her behalf, thus making it appear that there was nothing due her, when in fact a large sum was due. Clearly, this is not the case in which the Code intended to relieve the guardian from the liability for interest, and the commissioner was right in charging interest.

It remains to pass upon the correctness of the sum found due from Maybin to his ward by the commissioner. "A trustee is bound to keep clear, distinct and accurate accounts. If he does not all presumptions are against him, and all obscurities and doubts are to be taken adversely to him." Blauvelt v. Ackerman, 23 N. J. Eq. 495. "Trustees cannot use trust moneys in their business, nor embark it in any trade or speculation. If a trustee makes such use of the money he will be responsible for all loss, and he may be compelled to pay the highest rate of interest:" Perry, Trusts, § 464. Applying these rules to the case in hand, it is impossible to say that the commissioner has reported too large a sum against the guardian. The estimate made by the commissioner, of the amount which should have been received for the hire of slaves, seems to be supported by the testimony which would have justified a much higher valuation. His estimate of the value of the personal property, other than slaves, which come to the hands of the guardian, and was appropriated by him as his own, is also borne out by the evidence. Besides, the commissioner has allowed the guardian $1,641 more than he should for removing the mortgage incumbrance on the property subject to his life estate, and he has omitted to charge interest against the guardian for the four years of the war. As the guardian had appropriated the trust estate to his own use, and treated it from the beginning of his guardianship as his own, there is no ground for this omission. He is chargeable with interest from the time he appropriates his ward's property until he accounts and pays for it. I do not go into a minute discussion of the evidence on which the commissioner based his conclusions, because his report is presumed to be correct until error is made to appear. This has not been done. Even allowing the guardian a credit for the $500 which it is shown he paid towards the maintenance and education of his ward, and interest on this sum, the balance found by the commissioner is too small when his mistake in the amount allowed for satisfying the mortgage on the ward's lands, and his failure to charge interest during the war, are taken into consideration. The amount actually due the petitioner is considerably larger than the amount reported. As the sum reported will more than absorb all the assets of the bankrupt estate, the petitioner does not ask for any modification of the decree.

In my judgment, the claim of the petitioner against the bankrupt estate of Maybin, for the amount found due by the district court, is according to law, is sustained by the evidence, and the finding and allowance of the district should be affirmed. Ordered accordingly