PRINE *et al. vs.* MAPP *et al.*

80  137
97  617

1. Suit having been brought to recover certain land claimed under a deed and not as a homestead, and it appearing that if it had been sued for as a homestead, the action would have been barred by the act of 1876, it was conceded by counsel that the homestead proceedings were irrelevant, and the ground of the motion for a new trial based upon their exclusion was not insisted on.

2. Where a guardian applies to the ordinary for leave to sell the estate of his ward, it is not necessary to appoint a guardian *ad litem* to represent such ward, and a failure so to do will not avoid a sale made under an application which has been published, and upon which leave to sell has been granted, as provided by the code.

(a) Cases cited from other States, apparently conflicting with this ruling, will be found to rest upon the statutes of those States.

3. Although it is the duty of a father to provide for the maintenance, protection and education of his children until their majority, yet if he is unable to do so from his own means, and, as guardian of such children, he has in his hands an estate belonging to his wards, it would be legal for the ordinary to grant an order allowing him to use that estate for those purposes.

4. Where a guardian has been regularly appointed and has given bond, the death of the only surety on such bond will not abate the letters of guardianship and render any act of the guardian thereafter illegal and void. In such case, it is the duty of the ordinary to require the guardian to make a new bond or to give additional security, and on failure of the guardian to do so, his letters will be revoked, or other proper order will be passed; but if no such proceedings are had, and the ordinary continues to recognize the appointee as guardian and receive his returns as such, and grants an order for the sale of property upon regular application and proceedings therefor, the title of a purchaser at the guardian's sale will not be affected by the failure of the ordinary to require additional security of the guardian.

January 30, 1888.

Guardian and ward.    Sales.    Parent and child.    Before Judge JENKINS.    Baldwin superior court.    July term, 1887.

Reported in the decision.

ROBERT L. RODGERS and C. P. CRAWFORD, for plaintiffs.

D. B. SANFORD and T. G. LAWSON, for defendants.

SIMMONS, Justice.

It appears, from the record in this case, that Catherine Renfroe, a married woman, by consent of her husband, was a free trader prior to 1863, and as such accumulated certain money, which was invested by her in a house and lot in the city of Milledgeville. She died some time in 1863,

without obtaining title to said lot. Subsequent to her death, Wm. McKinley was.appointed administrator on her estate, and he paid the balance of the purchase money out of the proceeds of her estate; whereupon Seaton Grantland, on the 29th of January, 1864, executed and delivered a deed to said lot to William McKinley, administrator, "for the sole use and benefit of the estate of said Catherine Renfroe, deceased, and the children of said Catherine Renfroe, heirs of said estate, separate from Enoch E. Renfroe, former husband of said Catherine Renfroe." At the time of her death she left two children, Ida L. and Eva R. Renfroe, aged respectively one and three years old. Enoch E. Renfroe was appointed their guardian by the ordinary of Baldwin county, in April, 1866, and gave a bond as guardian for $3,000, with Mrs. Turner, his mother, as security.

At the time of Mrs. Renfroe's death, there appears to have been some litigation between her and Rebecca Foxton concerning this lot of land; and in 1867, Mrs. Foxton recovered a judgment against McKinley, the administrator, for $1,380.80. In February, 1869, Renfroe, as guardian, applied to the ordinary of said county to have said house and lot set apart to his wards as a homestead; which application was granted by the ordinary. In the same month and year, McKinley, as administrator, and Renfroe, as guardian, leased said house and lot to Mrs. Foxton for the term of seven years, for the purpose of paying off the judgment obtained against the estate of Mrs. Renfroe.

Mrs. Turner, security on the guardian's bond, died some time in the year 1870; and it does not appear that the ordinary ever cited Renfroe to give a new bond with other security. Mrs. Turner left a small estate, and in her will bequeathed nearly all of it to Enoch E. Renfroe, her son, the guardian of these minors.

In January, 1874, Renfroe, as guardian, applied to the ordinary for leave to sell this house and lot, and assigned as a reason therefor " that the children had arrived at the

ages of thirteen and fifteen, and that it was highly impor-
tant for them both that their education should receive at-
tention, that the income from their estate was insufficient
for their education, and that without leave to encroach up-
on the *corpus* of said estate their education must be dis-
continued"; and he asked leave to sell for the purpose of
applying the proceeds derived from said sale to the educa-
tion of the children.  This petition was sworn to by Ren-
froe, the guardian.  At the February term of the court of
ordinary, 1874, the ordinary ordered the usual citation to
be published, returnable to the March term of said court.
At the March term, the application was heard and it ap-
pears from the record that the ordinary required proof of
the inability of the guardian to maintain and educate his
children out of his own estate; it appears further that the
proof was, that the guardian owned only 280 acres of land,
of the value of $2,000, and personal property of the value
of $290, but that he was unable to obtain money on his
own credit for the purpose of educating the children.
This proof seems to have been satisfactory to the ordinary;
and an order was thereupon granted allowing him to sell
the house and lot, "and to encroach upon the *corpus* of
said estate, or the proceeds of said sale, to the amount of
$100 per annum each for said wards, for the purpose of
their education, as prayed for in his petition"; and re-
quiring him to make returns of his "actings and doings
in the premises."  In this order it was stated that the
usual citation had been published as provided by law.

In April, 1874, it appears that the land was sold by the
guardian at public sale, and F. B. Mapp became the pur-
chaser at the price of $1,001.  A deed was made to him
on the 11th of April, 1874, by the guardian, which deed
recites the application to sell, the citation published in the
newspaper, the order of the ordinary, and contains other
recitals usual in guardians' deeds.  In March, 1878, F. B.
Mapp, the purchaser at the guardian's sale, executed to
his wife, Mollie E. Mapp, and her minor children, a deed

Prine *et al. vs.* Mapp *et al.*

to said house and lot, the consideration being "natural love and affection."

Ida L. Renfroe married a Mr. Prine, and Eva Renfroe married a Mr. Wright. On December 23d, 1886, they brought their action of ejectment against Mapp and his wife for the house and lot. The action was in the statutory form. The abstract of title relied on and annexed to their petition was the deed of Grantland to McKinley, the administrator, and the fact that Mrs. Renfroe died in possession. The defendants filed a plea of " not guilty." Upon the trial of the case in the court below, the jury returned a verdict for the defendants. The plaintiff moved for a new trial, upon the following grounds: (1) " that the court erred in excluding from the jury the record evidence that the ordinary, in 1868, had set apart as a homestead for the plaintiffs, these minors, the disputed premises, on the application of Enoch E. Renfroe, their guardian and father;" (2) " that the court erred in charging the jury that, if the guardian's application to sell the wards' real property to provide education for them was regular, and the ordinary's order to sell was formal, and the advertisement and sale accorded therewith, then the purchaser got a good title, notwithstanding there was no guardian *ad litem* appointed in the case "; (3) " the verdict was contrary to law and evidence and the charge of the court." The motion was overruled and the plaintiffs excepted.

1. The first ground of the motion was not insisted on here, counsel for the plaintiff in error conceding the fact that the homestead proceedings had nothing to do with the trial of the case. The suit was not for the recovery of the land as a homestead, but to recover the possession and title; it was not because the property had been set apart to them as a homestead, but because they claimed the title and possession under the deed from Grantland to McKinley. If they had sued to recover it as a homestead, they would have been barred by the act of 1876.

2. The main ground relied on for reversal of the judg-

ment of the court below was the second ground of the motion. It was insisted that the court erred in holding that, where a guardian applied to the ordinary for leave to sell the estate of his ward, it was not necessary to appoint a guardian *ad litem* to represent the wards. It was claimed by counsel for the plaintiffs in error that, upon application to the ordinary for leave to sell, either by an executor, administrator or guardian, it was necessary to appoint a guardian *ad litem* for the wards, or the sale would be void. We do not agree with him in this view of the law. The code, §1828, says that " all sales of any portion of the property of the ward shall be made under the direction of the ordinary, and under the same rules and restrictions as are prescribed for sales by administrators of estates." Section 2559 declares, in substance, that before any administrator shall be allowed to sell property of the intestate, he must make application to the ordinary for leave to sell, notice of which application shall be published once a week for four weeks in the gazette in which the county advertisements are published; and if no objection is filed, and the ordinary is satisfied of the truth of the allegations in the petition, an order shall be passed granting the leave to sell, specifying therein the land as definitely as possible. The publication of this notice of the application is the only notice required by our statute to be given to the heirs at law in cases of sales by administrators, or to the wards in cases of sales by guardians. Any person interested can go before the ordinary and resist the application if he desires to do so. There is nothing in the code which requires a guardian *ad litem* to be appointed either for the minor heirs at law of an intestate, or for the wards of a guardian. The legislature seems to have thought—for fifty years at least—that this notice was sufficient. It has been the unvarying practice in this State, so far as we know or can ascertain, for the ordinaries to grant orders for the sale of property by guardians or administrators, upon the notice prescribed in the statute. So far as

we know, or can ascertain from the older members of the profession, no guardian *ad litem* has ever been appointed by the court of ordinary when an application was made by a guardian or administrator to sell property. We have carefully read the authorities cited by counsel for the plaintiffs in error, and find that in all the cases cited by him in other States, in which the courts held that a guardian *ad litem* was necessary, the decisions were based distinctly upon the statutes of those States. In the cases cited by him from the Mississippi Reports, it appears that the statutes of Mississippi required that, before the administrator could sell real estate, all the heirs and creditors of the estate should have personal notice, and if there were minors, they should not only have notice, but a guardian *ad litem* should be appointed for them. In the case of Clarke *vs.* Thompson, 42 Illinois Rep., cited by counsel for the plaintiffs in error, the statute of Illinois required publication of the notice, or the serving of notice and a copy of the petition upon the heirs, thirty days before the filing of the petition. In that case, neither the publication of the notice nor service of a copy of the petition was made upon the minor, and although a guardian *ad litem* had been appointed by the court below, the Supreme Court held that the court below had no jurisdiction for that reason. In the case of Good *vs.* Norley, 28 Iowa, cited by counsel for the plaintiffs in error, it was held that in order to render an administrator's sale of real estate valid as against an infant heir, he must have been served with notice of the proceedings, as provided by the *statute*, and an appearance and answer by a guardian *ad litem* appointed by the probate court, without such notice having been given to the infant heir, would not confer upon the court jurisdiction of his person, and the proceedings as to him would be void. In the case of Doe *vs.* Bowen, 8 Ind. 197, also cited by counsel for the plaintiffs in error, the decision recites that the statutory notice of thirty days by service, or sixty days by publication, after the filing of such application,

had not been given, and that the sale was therefore void. In the case of Blodgett *vs.* Hitt, 29 Wis. 169, the decision was put upon the ground that the administrator had failed to state the time and place of sale as required by the statute, and the sale was therefore void. So it will be seen that all the decisions cited by counsel for the plaintiffs in error were put distinctly upon the statutes of the several States wherein they were made.

3. It was argued that the jury found contrary to law, because it is the duty of the parent to support and educate his children, and that for this reason the court of ordinary had no power or authority to grant the order of sale in this case. It is true that the code, §1792, declares " it to be the duty of the father, until the majority of the child, to provide for its maintenance, protection and education"; but we apprehend that if the father is unable from his own means to support and educate his children, and if he, as guardian of such child, has an estate in his hands belonging to his ward, it would be legal for the ordinary to grant an order allowing him to use that estate for these purposes. In this case, it appears from the record that the ordinary heard evidence on this point before he granted the order, and that he must have been satisfied before he granted it that the father was unable to educate his children, or he would not have granted it. It was in his power and discretion to do so when he became satisfied of the inability of the father to support and educate his wards out of his own estate. *Hines and Bryan vs. Mullins, ord.,* 25 *Ga.* 696; Bourne *vs.* Maybin, 3 Woods, 724; Myers *vs.* Myers, 16 Am. Decis. 648, and note p. 661.

4. It is insisted further by counsel for the plaintiffs in error that this sale by the guardian was void, because he had ceased to be guardian by reason of the fact that the only security on his bond had died, and no new bond had been given; and it was claimed, therefore, that when his security died, his letters of guardianship abated, and any act he did after that was illegal and void. We do not so

understand the meaning of our code. Renfroe had been appointed guardian of these children by the judgment of the court of ordinary. It is true the law required him to give bond with sufficient security, which he did; but we know of no law which abates the letters of a guardian when his security dies or becomes insolvent. In either event, it is made the duty of the ordinary, on his own motion if necessary, to require the guardian to make a new bond, or give additional security; and when this is done by the ordinary, if the guardian fails to comply with the order, then the code declares " his letters shall be revoked, or that the ordinary shall pass such other order as, in his judgment, is expedient under the circumstances of the case." Code, §1815. This is the only provision made by the law for revoking letters. If the ordinary has knowledge of the death or insolvency of the security and fails to act, it is a dereliction of duty on his part. If, however, he continues to recognize the appointee as guardian, and receives his returns as such, and acts upon the application of the guardian to sell property, as was done in this case, and the proceedings are regular and according to law, and a person purchases at the guardian's sale, such sale being authorized by the order of the ordinary, and pays his money for the property thus purchased, we do not think that the title and possession thus acquired can be or ought to be disturbed because of the failure of the ordinary to require additional security.

Judgment affirmed.