## CLARK *vs.* ROWLING.

A discharge in bankruptcy under the late act of congress operates upon a judgment obtained against the bankrupt intermediate the commencement of the proceedings and the granting of the discharge, where the judgment is founded on a debt existing at the time the proceedings were commenced.

Accordingly where a creditor brought a suit against his debtor, and pending the suit the debtor instituted proceedings to be discharged as a bankrupt, but the discharge was not obtained until after judgment was recovered; *held*, that the discharge was a good defence to a bill in equity subsequently filed by the creditor for the purpose of collecting the judgment out of the equitable property of the debtor.

The cases of *Thompson* v. *Hewitt*, (6 *Hill*, 254,) and *Kellogg* v. *Schuyler*, (2 *Denio*, 73,) commented on and explained.

A judgment upon a contract technically merges the demand, but not in so complete a sense that the courts may not look behind the judgment to see upon what it is founded, for the purpose of protecting the equitable rights connected with the original relation of the parties.

The costs included in a judgment for the recovery of a debt, are considered as accessory to the debt, so as to be discharged by bankruptcy when the debt itself is discharged.

Clark v. Rowling.

CLARK filed a bill in the court of chancery before the vice chancellor of the fifth circuit against John Rowling, jun. and Joseph Rowling, for the purpose of procuring satisfaction of a judgment against them, after execution at law had been returned unsatisfied. Other persons were also made defendants who were alledged to be the fraudulent assignees of the property of the judgment debtors. The decree of the vice chancellor was favorable to the complainant as against the judgment debtors, and they appealed to the chancellor. Pending the appeal the cause became vested in the supreme court organized under the new constitution; and that court, sitting in the fifth district, reversed the decree of the vice chancellor and dismissed the bill. The complainant appealed to this court.

*W. Crafts,* for appellant. A bankrupt's discharge extends only to such debts as he owed at the time of presenting his petition; and the judgment to collect which the bill was filed in this cause did not exist when the bankrupt presented his petition, and therefore is not reached by the bankrupt's discharge. The former debt is merged in the judgment. (*Clements* v. *Langley,* 5 *B. & Ald.* 97, 250; *Lansing* v. *Prendergast,* 9 *John.* 127; *Frost* v. *Carter,* 1 *John. Cas.* 73; *Crouch* v. *Gridley,* 6 *Hill,* 250; *Thompson* v. *Hewitt, id.* 254; *Kellogg* v. *Schuyler,* 2 *Denio,* 73; *Russ* v. *Gilbert,* 2 *M. & Sel.* 70; *Birch* v. *Charland,* 1 *T. R.* 715; *Butler* v. *Miller,* 1 *Denio,* 407; *Andrews* v. *Smith,* 9 *Wend.* 53; 6 *T. R.* 489; 16 *Ves.* 256; 3 *Wilson,* 14; 2 *id.* 137, 139; *Taylor* v. *Mills, Cowp.* 138, 525, 544; 17 *Verm. R.* 503; *Brooks* v. *Rogers,* 1 *H. Black.* 640; *Virgers* v. *Aldrich,* 4 *Burr.* 2482; *Stewart* v. *Green,* 11 *Paige,* 535.) This suit was pending at the time Rowling presented his petition to be declared a bankrupt; and Rowling or his assignee should have applied to the judge of the district court of the northern district for an injunction restraining the plaintiff from proceeding in the suit to judgment, and compelling him to come in and prove his debt. (*Smith* v. *Gordon,* 6 *Law Rep.* 313; *id.* 7 *id.* 119, 553; *Bellows* v. *Peck,* 3 *Story's R.* 428.)

The costs included in the judgment arose, in part, after Row-

ling presented his petition, and were not due till taxed, and therefore not discharged by the certificate. (*Ex parte Hill,* 11 *Ves.* 646 ; *Eden on Bank. Law,* 34 *Law Lib. part* 1, *p.* 115, § 12 ; 4 *Bing.* 57.)

*H. C. Van Schaack,* for respondents. The notes upon which the judgment mentioned in the complainant's bill of complaint was entered, and the judgment upon those notes, constituted a debt provable under the bankrupt law, and the discharge and certificate obtained by John Rowling, jun. under that law, "fully and completely discharged" him from that debt ; and such discharge and certificate are "a full and complete bar" to the bill. (*Const. U. S. art.* 1, § 8 ; *Bank. Law of* 19*th Aug.* 1841, §§ 1, 4 ; *Graham* v. *Benton,* 1 *Wil. R.* 41 ; *Blandford et al. ex'rs of Froud* v. *Foote, Cowp.* 138, (1774 ;) *Bonteflour* v. v. *Coats, id.* 25 ; *Lewis* v. *Piercy,* 1 *H. Black. R.* 29 ; *Hurst* v. *Mead,* 5 *T. R.* 365 ; *Phillips* v. *Brown,* 6 *id.* 282 ; *Bamford* v. *Burrell,* 2 *Bos. & Pul.* 11 ; 2 *Black. Com.* 484, *Christ. note* (23 ;) *Willett* v. *Pringle,* 5 *Bos. & Pul.* 190 ; *Scott* v. *Ambrose,* 3 *M. & Sel.* 320 ; *Dinsdale* v. *Eames,* 6 *Com. Law R.* 3 ; *Wyman* v. *Mitchell,* 1 *Cowen,* 316 ; *Raymond* v. *Merchant,* 3 *id.* 147 ; *In the matter of Wendell,* 19 *John.* 153 ; *Betts* v. *Bagley,* 12 *Pick.* 572 ; *McDougald* v. *Reid,* 5 *Ala. R.* 810 ; *Johnson & Clark* v. *Fitzhugh,* 3 *Barb. Ch. R.* 360 ; 15 *John.* 358 ; 3 *Cowen,* 89 ; 4 *John.* 191 ; 1 *Barb. Ch. R.* 347, 246 ; 1 *John. Cas.* 105 ; 1 *Cowen,* 165 ; *id.* 42 ; 1 *Bos. & Pul.* 427 ; 3 *Caines' R.* 100 ; 6 *Hill,* 246 ; *Tillotson* v. *Preston,* 3 *John.* 229 ; *Warner* v. *Constant,* 5 *id.* 135.)

HURLBUT, J. In the year 1840, the defendants, John & Joseph Rowling, who were partners in the milling business in Madison county in this state, were indebted to the plaintiff and others in various sums, which were secured by seven promissory notes. In the year 1841, the plaintiff instituted a suit upon these notes, and after some litigation, finally obtained a verdict upon them on the 18th day of April, 1843, for the sum of $929,-

Clark *v.* Rowling.

27, upon which a judgment was perfected on the 13th day of
May of that year for $1052,75, including $123,48 as costs of
suit; and execution was returned unsatisfied in the month of
August thereafter.

The present suit was commenced in the late court of chan-
cery on the 7th day of February, 1845, by bill in the usual
form of a creditor's bill, for the purpose of obtaining satisfaction
of the judgment out of the property of the defendants, which
the plaintiff had not been able to reach by execution at law.

The defendant John Rowling jun. set up in his answer, that
on the 29th day of December, 1842, he duly presented his peti-
tion to the district court of the United States for the northern
district of New-York, and applied for the benefit of the bank-
rupt act of 1841.   That such proceedings were thereupon had,
that he was duly declared a bankrupt, and afterwards on the
10th day of July, 1843, a decree was made by that court where-
by he was fully discharged from all the debts owing by him at
the time of the presentation of his petition, and a certificate of
such discharge was duly granted him.   A like defense was set
up by the answer of Joseph Rowling, except that his petition in
bankruptcy was presented on the 27th day of January, 1843,
and his discharge was granted on the 25th day of August, of
the same year.

It therefore appears from these answers, that the suit at law
was pending on the notes when the defendants respectively pre-
sented their petition in bankruptcy, and that their certificates
of discharge were granted, the one in about two and the other
in about three months after the judgment was perfected.   There
was no opportunity for them to plead their discharge during
the pendency of the suit at law; and the question now presented
is, whether in answer to this bill, which is a species of equita-
ble suit upon the judgment, the defendants can set up their dis-
charge with the same effect as in an action on the notes upon
which the judgment was founded; it not being denied that the
discharge operated upon the debt which was secured by the
notes—the same being provable under the proceedings in bank-
ruptcy—but the plaintiff contending that the notes were merged

in the judgment; that the latter is a new debt which did not exist at the time the bankrupts petitioned, and that therefore it ought not to be affected by their discharge.

It is true, that the notes as evidence of an indebtedness were merged in the judgment; which being greater security, operated to extinguish the lesser; but does it therefore follow, that the judgment to all intents became a new debt, and that the merger or extinguishment of the notes was so complete, as that for the purpose of protecting the defendants in an equity connected with their original indebtedness, we may not look behind the judgment and see upon what it was founded? A judgment, instead of being regarded strictly as a new debt, is sometimes held to be merely the old debt in a new form, so as to prevent a technical merger from working injustice. And this exception to the doctrine contended for by the plaintiff, has obtained, especially in cases of insolvency and bankruptcy, for the protection as well of the creditor as the debtor, and has been applied impartially for the benefit of both. An example in favor of the creditor is found in the case of *Wyman* v. *Mitchell*, (1 *Cowen's Rep.* 316.) This was an action of debt on a judgment of the supreme court of this state, of August term, 1816; the plea was, that the defendant on the 30th day of December, 1817, was discharged under the insolvent act of this state, of 1813; to which there was a replication that the judgment declared on was rendered on a judgment obtained in the year 1814, in the court of common pleas of Cumberland in the state of Maine, which last judgment was rendered upon certain notes made by the defendant to the plaintiff, in the state of Maine, prior to the New-York insolvent act of 1813. And the court held, that although the original undertaking of the defendant was so merged in the judgment that no suit could be maintained upon it, yet that it was proper to inquire into the time and circumstances of the contract upon which the first judgment was founded, for the purpose of taking the case out of the operation of the defendant's discharge. (*See also Raymond* v. *Merchant*, 3 *Cowen's Rep.* 147.) An example of a similar kind, but in favor of the debtor, may be found in the case

of *Betts* v. *Bagley*, 12 *Pick. Rep.* 572,) which was an action of debt on a judgment recovered in October, 1823, in the court of common pleas of Berkshire county in the state of Massachusetts. The defendant pleaded with proper averments, a discharge under the insolvent laws of the state of New-York, of 1813, which was granted on the 17th day of May, 1828, but which could not have operated upon a judgment in the state of Massachusetts, unless the court had inquired into the circumstances of the case and the nature of the debt upon which the judgment was founded. Upon such inquiry, it appeared, that when the suit was commenced in the common pleas of Berkshire, and the original judgment was rendered, both parties were citizens of this state, and that the judgment was upon promises made and to be executed here ; and under these circumstances the court gave effect to the defendant's discharge, refusing to carry the technical doctrine of merger to such extent as to defeat the equities of the defendant arising from the nature and circumstances of the original debt.

We have been referred to cases of bankruptcy in England, where the judgment was obtained before the certificate on a debt which existed previous to the bankruptcy, so that the defendant had no opportunity to plead his discharge, and where the courts have given effect to the discharge on motion. But as this practice was expressly enjoined by the 13th section of the statute of 5 *Geo.* 2, entitled an "act to prevent the committing of frauds by bankrupts," and other bankrupt acts, many of the cases cited do not come with the same authority as if they had been determined in administering the common law powers of the British courts. Some of these cases, however, base the relief which is granted to the bankrupt, under such circumstances, upon broader ground. (*See Lester* v. *Mundell*, 1. *Bos. & Pull.* 427.) This was an application to have a writ of *fieri facias* set aside and the goods and money levied under it restored to the defendant, on the ground of his having become a bankrupt subsequent to the time when the cause of action accrued, and having obtained his discharge after the *fi. fa.* was issued. The court entertained the motion rather than drive the defendant to

his *audita querela,* saying that by the modern practice, the defendant might obtain the same relief as by *au. quer.* in a summary way. But upon its being suggested by counsel that for a particular cause stated the defendant was deprived of the benefit of the bankrupt act, and that he had frequently promised payment since his certificate; the court said that when they entertained summary jurisdiction, in order to relieve a party from the necessity of having recourse to an *au. quer.,* they would look into the circumstances of the case, and see whether there was any thing to prevent the *au. quer.* from taking effect; and ordered the rule to stand over, the paintiff to deliver a declaration, and the defendant to plead his certificate; and the parties to go to trial at the ensuing assizes.

An *audita querela* lay in behalf of a defendant in a judgment to be relieved upon good matter of discharge which happened after the judgment, but which he had no opportunity of pleading. It was in the nature of a bill in equity and was a writ of the most remedial nature, " and seems to have been invented," says Blackstone, " lest in any case there should be an oppressive defect of justice where a party who hath a good defense, is too late to make it in the ordinary forms of law." (3 *Black. Com.* 406, 407.) The relief formerly procured by this writ is now obtained summarily by motion; and yet it often happens that complete justice can not be administered in this summary manner, and the courts are compelled to frame an issue, or to direct an action to be brought, in order to determine the rights of the parties, as was done in the case of *Lester* v. *Mundell.* But an issue thus joined has no higher merit than if it were framed by the voluntary act of the parties themselves; and if in a suit upon a judgment, they frame an issue presenting the identical questions which might be raised upon a summary application, it is difficult to perceive any well founded objection to their determination in such suit.

The defendants in the present case, instead of moving summarily for the relief, to which it appears they would have been entitled, awaited the action of the plaintiff; and when he instituted an equitable suit upon the judgment, they set up in

their answer by way of defense, the very matter upon which they might formerly have been relieved by *au. quer.* or according to the present practice, by motion. The court was thus relieved from the burthen of framing an issue to determine the validity of the discharge—it was presented to them by the pleadings in this suit—the plaintiff having asserted by his bill that the debt secured by his judgment was a valid and subsisting demand against the defendant, and of which he was entitled to satisfaction out of their assets; and the defendant having answered that the judgment was discharged by the decree in bankruptcy.

The issue thus presented was as complete as could be framed for the purpose of testing the effect of the defendant's discharge, and I am satisfied that the court below were correct in entertaining it.

The leading cases to which we were referred in support of the plaintiff's case do not uphold it. In *Birch* v. *Charland*, (1 *T. R.* 715,) the bankrupt, after his bankruptcy, gave a bond and warrant of attorney to confess judgment, which was held not to be barred by his certificate, although the original debt was contracted before; because the judgment was regarded as a new debt, arising upon a *new consideration*, the bond and warrant of attorney having been given in order to procure the defendant's liberty.

In *Thompson* v. *Hewitt*, (6 *Hill*, 254,) the defendant moved for a perpetual stay of execution upon the judgment in that suit, on the ground that he had obtained a discharge as a voluntary bankrupt. The action was commenced in May, 1842, to recover the amount of a promissory note; on the 9th of January, 1843, the defendant presented his petition in bankruptcy; on the 6th of May following his attorney gave a relicta and cognovit, and judgment was perfected on the 29th of July. On the 7th of August following, the defendant obtained his discharge. It appeared, however, that the cognovit was given and received as a compromise for a less sum than was claimed to be due, and upon the express understanding that any discharge in bankruptcy which the defendant might obtain should not affect

the judgment. And the court refused to grant the defendant a favor in direct violation of his agreement, and under the circumstances of the case, treated the judgment which was entered on the cognovit, as a new debt, which was not affected by the discharge ; and it would seem there was enough in the case to enable the court to do so, upon the principle which obtained in *Birch* v. *Charland,* without determining that the judgment, divested of the circumstances under which it was rendered, was, of itself, a new debt.

The case of *Kellogg* v. *Schuyler,* (2 *Denio,* 73,) in strictness decided no more than that a cause of action in trespass was not affected by a discharge in bankruptcy, although a verdict had been rendered before the presentation of the petition to be declared a bankrupt ; which is in harmony with all the cases.

The case of *Stewart* v. *Green & Bannister,* (11 *Paige's Ch. R.* 535,) arose upon a creditor's bill, and the chancellor intimated, although he did not definitely pass upon the point, that the bankrupt's discharge of the defendant Bannister, which was obtained more than a month before the recovery of the judgment against him, could not avail him in the court of chancery while that judgment remained in full force ; and that he ought to have pleaded his discharge in bar of the further maintenance of the suit at law. And this may be conceded, where the defendant has an opportunity for that purpose, which was not the case of the defendants in this suit. It seems, however, from subsequent decisions in the late court of chancery, that but for such opportunity of Bannister to plead his discharge at law, it would have been held a good answer to the plaintiff's bill in the suit referred to. For in *Johnson* v. *Fitzhugh,* 3 *Barb. Ch. R.* 360,) the chancellor held, that although to a certain extent a judgment technically changed the nature of a debt, yet its identity still remained, so far as that, if contracted previously to the institution of proceedings in bankruptcy against the debtor, it would be barred by a discharge obtained after the entry of the judgment. (*See also Penniman* v. *Norton,* 1 *Barb. Ch. R.* 246.)

As to the costs which were added to the original debt by the

Clark *v.* Rowling.

plaintiff's proceeding to judgment, these have always, in cases of bankruptcy, been regarded as accessory to the debt, and as standing upon the same foundation in reference to the discharge. (*Cowp. R.* 138; 1 *Wils. R.* 41.)

On the whole, I think it may be held both upon principle and authority, that the bankrupt discharges which the defendants have set up in their answers, are available as a defence to this suit. The decree of the supreme court must be affirmed.

Bronson, Ch. J. (dissenting.) The complainant filed a creditor's bill for the purpose of obtaining satisfaction of a judgment which he had recovered against John and Joseph Rowling. The suit in which the judgment was recovered was commenced in 1841, on several promissory notes made by the Rowlings in 1840. In December, 1842, John Rowling presented his petition to be discharged as a voluntary bankrupt. In May, 1843, judgment was rendered for the plaintiff; and in July following, Rowling obtained a discharge from all the "debts owing by him at the time of the presentation of his said petition," December, 1842. Joseph Rowling was also discharged as a bankrupt, under circumstances which make the same question as that which relates to John; and I shall hereafter make no distinction between the two cases. The Rowlings have set up their bankrupt discharges as a bar to the complainant's claim on the judgment. They insist that "they were fully and completely discharged, released and exonerated of and from the said judgment," and from the notes on which the judgment was entered; and that the discharges are "a full and complete bar to the filing of the complainant's bill as against them respectively;" and that they are under no legal or equitable obligation to pay the said judgment." The whole matter may be summed up and brought to a point in few words. The complainant sues to enforce a judgment recovered in May, 1843: to this the defendants answer, that the action is barred, because they have been discharged from all the debts which they owed in December, 1842—five months before the judgment was rendered. To say that a discharge from debts owing in 1842, is a discharge

from a judgment recovered the year afterwards, or a bar to a remedy on the judgment, is simply and absolutely absurd.    The thing is so plain that it cannot be illustrated or made more clear by argument.

But it is said, that the notes on which the judgment was re- covered were discharged.    If that be granted, it does not ad- vance a single step towards showing the judgment discharged. The judgment was a debt—or conclusive evidence of a debt— the moment it was entered, whether there was any considera- tion for it or not.    It was a demand of the highest nature known to our law—a debt of record.    A record imports abso- lute verity ; and no averment in pleading is admissible against it.    So far has this rule been carried, that where the court on motion has made an order setting aside a judgment for irregu- larity, the order is no answer to the judgment, until a *vacatur* has been enrolled or entered of record.    (*Croswell* v. *Byrnes,* 9 *John.* 287.)    Let it be granted that the notes were paid, re- leased, discharged, or even annihilated, the day before the judg- ment was recovered, still the judgment, until vacated or set aside, would be conclusive evidence of a debt.    In an action on the judgment the defendant could not plead to the consideration, nor set up as a bar that there should not have been a recovery. Where the court has jurisdiction, it matters not how irregularly or unjustly a judgment may have been entered; it is still a judgment, and can not be impeached in pleading.    The irregu- larity or injustice can not be set up as an answer to an action on the judgment.    No color for such a defence can be found in the books.    It is a new thing in the law.

When the case is such that the defendant ought to have re- lief, his remedy is a direct proceeding to get rid of the judgment, either by setting it aside, or obtaining an order for a perpetual stay of proceedings.    This relief is granted in a summary way, on motion, by the court in which the judgment was rendered ; and upon such terms as the justice and equity of the case may require.    If the judgment was irregularly entered, it will be set aside, and the defendant allowed to plead his defence.    In cases where he has had no opportunity to plead, as where the original

debt or demand was satisfied, released or discharged between the verdict and the judgment, the judgment will either be set aside, or a perpetual stay of proceedings will be ordered, as the circumstances of the case may require. And where some matter arises after judgment which should preclude the plaintiff from having execution, a perpetual stay of proceedings, or an acknowledgment of satisfaction will be ordered. Formerly the remedy in such cases was by writ of *audita querela;* but the courts began about two centuries ago to give a more cheap, expeditious and equally efficient remedy by motion; and the writ of *audita querela* has every where fallen into disuse. But whether the remedy is by *audita querela* or by motion, it is a direct and orderly proceeding either to vacate the judgment, or to restrain the plaintiff from using it. There is no authority for saying that the judgment may be attacked in any other way. Relief is granted by *audita querela* or on motion for the very reason that the party has no other remedy. If the case be such that he can plead in bar, that is a sufficient reason for refusing relief on motion. The books are full of cases where relief has been granted on motion, while there is not one case which holds that the defendant may in pleading go behind the judgment for the purpose of impeaching it.

On the argument of the cause, and in the opinion to which we are referred as containing the reasons of two of the judges of the supreme court for this decree, (*Dresser* v. *Brooks*, 3 *Barb.* 440,) a good deal was said about some remarks of mine touching the doctrine of merger or extinguishment. It can not be necessary to cite authorities to prove the general doctrine that a claim for damages on account of a tort is extinguished by a judgment recovered for the wrong. Clearly there can not be a second action for the same injury. Nor did I suppose it would be denied, that if a creditor accept or obtain a security of a higher nature than he had before, it is an extinguishment of the first debt or security, except in cases where the second security is collateral to the first. (*Higgen's case,* 6 *Co.* 44; *Goodwyn* v. *Goodwyn,* *Yelv.* 39; *Vin. Ab. Debt* (*Y.*); *Bac. Ab. Extinguishment,* (*D.*); *Andrews* v. *Smith,* 9 *Wend.* 53; *Davis* v.

*Anable,* 2 *Hill,* 339.) After the plaintiff in this case had sued and obtained a judgment on the notes, I supposed no lawyer would say that he could have another action on the same notes; and the reason why he could not is, that the notes were merged in, and extinguished by the judgment. Still it is undoubtedly true, that courts may sometimes look beyond the judgment to see for what cause it was recovered. This may be done for various purposes. The plaintiff may do it for the purpose of securing his rights as a creditor against a fraudulent conveyance by the debtor, or as an answer to an insolvent or exemption law passed after the contract was made on which the judgment was recovered. The defendant may do it for the purpose of showing an extinguishment of the original cause of action; and for other purposes not inconsistent with the validity of the judgment. Cases of this kind are cited by the supreme court. But neither party can go behind the judgment for the purpose of attacking or impeaching it by pleading in a collateral action. No case of the kind was found by the learned judge who delivered the opinion of the supreme court, and none has been found by the counsel for the defendants. I have carefully examined the long list of authorities cited by the court and the counsel, as well as many others; and with the exception of an *obiter dictum* of the chancellor in *Johnson* v. *Fitzhugh,* (3 *Barb. Ch. R.* 360,) there is no color of authority for saying, that the defendant may plead in bar of an action on a judgment the fact that there was or is a good answer to the cause of action on which the judgment was recovered. Cases are cited, and many more might be added, which show that the defendant may sometimes have relief on motion, or by *audita querela,* where he had no opportunity to plead the defense on which he relies; but none which show that he can have relief in any other way.

I ought perhaps to notice more particularly the case of *Blandford* v. *Foote,* (*Cowp.* 138,) because it has been put forward as a " direct and conclusive decision on the very point in dispute," and as " one which ought to be decisive of the question ; sustained as it is by the great authority of Lord Mansfield's name, and having survived a period of 70 years without ever having

been questioned or doubted." Now without derogating in the least from the high respect which is claimed for that decision, two remarks upon it will be sufficient for the present purpose. In the first place, the case arose and was decided on a provision in the English bankrupt act, (12 *Geo.* 3, *ch.* 47, § 2,) which is not contained in our bankrupt law; and consequently no such case either has, or can arise in this country. And secondly, the relief which was given to the defendant in that case he got on motion, and could not have been obtained in any other way. So much for the case in point.

It has been said, that the judgment was provable under the bankrupt act; and that a discharge may extend to all debts which are provable. To this I answer, first, that there is nothing in the bankrupt act which makes a judgment provable under it which was recovered after the petition was presented. And secondly, it is not important to inquire what the discharges might have been, for we must be governed by what they are; and they are respectively discharges from the "debts owing by him [the bankrupt] at the time of the presentation of his petition;" and from no other. This judgment did not then exist, and consequently was not reached by the discharges.

This carries us back again to the starting point. In answer to an action to enforce a judgment recovered in 1843, the defendants set up bankrupt discharges from all debts which they owed the year before. Such a defence is a palpable absurdity.

I have assumed that the Rowlings might have had relief against the judgment on motion, if they had applied in due time. But it is proper to say, that our bankrupt act does not, like the English bankrupt law, make provision for such a case; and it is far from being clear that the defendants could have got rid of the judgment in any way. But conceding that they might, we can not give the relief which they claim without a plain departure from well established principles.

It is my humble office to search out and declare the law as it is. I have no commission to make it better: that high prerogative has been entrusted to the legislature.

I think the decree of the supreme court erroneous; and my brother JEWETT concurs in that opinion.

TAYLOR, J. did not hear the argument, and gave no opinion.

And thereupon the decree of the supreme court was affirmed.