### ABNER DAWSON v. J. C. HARTSFIELD.

*Bankruptcy—Discharge—Judgment after Adjudication on Existing Debt—Practice.*

1. A discharge in bankruptcy operates to discharge a debt in existence at the time of the adjudication in bankruptcy and upon which *a judgment is thereafter obtained.*

2. In such case, the discharge can be pleaded upon a motion for leave to issue execution, whatever length of time may have elapsed since it was granted.

(*Mizell* v. *Moore*, 7 Ire. 255 ; *Hyman* v. *Devereux*, 65 N. C. 588 ; *Falkner* v. *Hunt*, 76 N. C. 202 ; *Pugh* v. *York*, 74 N. C. 383, cited and approved.)

(Faircloth, J. *Dissenting.*)

Motion for leave to issue execution under C. C. P., § 256, heard on appeal at Chambers in 1878, before *Seymour, J.*

The plaintiff on March the 5th, 1868, commenced his action against the defendant and one Parrott for a debt due on their sealed promissory note, and in March, 1869, at Spring Term of Lenoir Superior Court, recovered judgment by default against both. The defendant filed his petition in bankruptcy on April the 17th, 1868, and on April the 14th, 1869, obtained his discharge. Execution issued on the judgment on May the 14th, 1869, on which the sheriff made return that no property could be found. No further action was taken in the cause until May the 31st, 1878, when an affidavit was made and notice given by the plaintiff to the defendant of a motion for leave to issue execution under C. C. P. § 256. On the hearing of the motion before the Judge, the defendant pleaded his discharge in bankruptcy which the Court held to be a valid defence and denied the motion, and the plaintiff appealed.

DAWSON *v.* HARTSFIELD.

*Messrs. Busbee & Busbee,* and *Merrimon, Fuller & Ashe,* for plaintiff.

*Mr. H. F. Grainger,* for defendant.

SMITH, C. J. (After stating the case as above.) Two objections are offered to the defence, which will be successively considered:—

1. It is argued that debts existing at the commencement of the bankrupt proceeding alone are provable against the the bankrupt's estate, and that the plaintiff's debt being merged in the judgment subsequently rendered, is neither itself provable nor affected by the discharge.

It is true the bankrupt proceedings all have relation to the time of filing the petition, and as of that date, the bankrupt's estate is apportioned among his creditors. His future acquisitions and liabilities are in no manner involved.

Several cases have been called to our attention to show that the effect of this merger is to create a new debt which can not participate in the distribution of the estate, and is not discharged by the final decree. It is so declared by the Supreme Court of Massachusetts in *Bradford* v. *Rich,* 102 Mass., 472, and by the District Court of the United States, *In re Gallison,* 5 Bank., Regr., 353, and in other cases. In the last mentioned case, after referring to numerous and conflicting decisions, the District Judge, LORING, says: "I am of the opinion that a judgment obtained after the adjudication in bankruptcy, creates a new debt which can not be proved in bankruptcy, because the judgment is a merger, and creates a new debt."

In *Mizell* v. *Moore,* 7 Ire., 255, this Court held that where the defendant pleaded a set off of certain bonds, which he afterwards reduced to judgment, the plea was defeated because the set off did not exist in the form in which it was pleaded, nor could the judgment be made available

in its stead, for the reason that it did not meet the specifications of the plea, and moreover, did not exist when the plea was put in.

These decisions all proceed upon the niceties of legal pleading and rest entirely upon technical rules. They fail to recognize the spirit and purpose of the act of congress, and the reasoning by which they are applied to cases in bankruptcy is not at all satisfactory to our minds. This will appear from an examination of the provisions of the act itself:—

"No creditor proving his debt or claim shall be allowed to maintain any suit at law or in equity," &c. Rev. Stat., U. S., § 5105.

To entitle a claimant against the estate of a bankrupt to have his demand allowed, it must be verified by a deposition in writing under oath and signed by the deponent setting forth the demand, the consideration thereof, and whether any and what securities are held therefor, and whether any and what payments have been made thereon. Ibid, § 5077. The form of proof is in strict accord with the law, and no claim will be allowed without the necessary oath. It is required not less to support the debt where evidenced by the bond of the bankrupt and where reduced to a judgment even, than where it rest on parol proof of the contract on which it is founded. It is the debt itself, not the form it may wear, which shares in the division of the estate, and which is affected by the discharge. The debt when once created remains one and the same through all the changes it may undergo in the evidence to support it. It is the relation of debtor and creditor on which the bankrupt act operates, taking the estate of the one and appropriating it to the demands of the other, and putting an end to the relation itself. It is not a different debt because previous to the judgment the evidence of it consisted in the debtor's bond, but the judgment simply and conclu-

sively establishes its legal obligation. The bankrupt law in its practical operation is an equitable system, and as a Court of Equity, regards the indebtedness as the essential element to be considered, and not the form in which it may appear. The technical rules of pleading, and the evidence applicable thereto would in a great measure defeat the beneficent purpose of the law, if allowed to control its operation, and are obviously not within the scope of its provisions.

It may be further suggested as an answer to the argument that the old debt becomes extinct and a new debt is created by the judgment, that if this were so, it would be difficult to see how a voluntary assignment of property could be successfully assailed by a creditor. As the assignment is valid except as to existing creditors, or unless made with an actual fraudulent intent, the very act of prosecuting his claim to judgment in order to subject the conveyed property to his debt, would defeat the purposes by extinguishing the debt itself. Equally unreasonable is it, to hold a debt to be destroyed by the judgment which conclusively ascertains and establishes its existence and obligation.

We do not assent to the reasoning contained in the cases cited, but concur in the numerous adjudications in which a contrary doctrine is maintained. We will refer to some of them:—

In *Hyman* v. *Devereux*, 65 N. C., 588, this Court decided that the identity of the debt described and secured in a mortgage was not destroyed by the taking of a new bond, unless such was the intent of the parties, and that it still retained its mortgage security.

In *Dresser* v. *Brooks*, 3 Barb. (N. Y.) 429, a similar provision in the bankrupt act of 1841 came under review, and the subject was elaborately discussed. After a full and careful examination of the English and American authori-

22

ties, the Court arrived at a conclusion which it announces in these words: "We are of the opinion, independently of the authorities to which we have adverted, that a sound construction of the provision in the bankrupt act declaring the effect of a discharge when duly granted, requires us to hold the certificate to be a bar to a debt existing when the petition was filed, notwithstanding such debt has passed into judgment. It was provable under the act, and the plaintiff was entitled to receive upon it his dividend of the bankrupt's estate. It was therefore precisely such a debt as the policy and spirit of the act intended should be discharged." And it is added: "The consequence of adopting the strict and narrow construction of holding a judgment exempt from the operation of a discharge, because the debt exists in a different form and under a different name, would in the case of a bankrupt whose debts were numerous, utterly defeat the benign object of the act, and leave the unfortunate bankrupt subject to a great portion of his debts after every dollar of his estate had been faithfully devoted to their payment."

In the notes to Bump's Law and Practice of Bankruptcy (6 h Ed.) at page 411, the principle is stated with great force and clearness and supported by numerous citations: "A debt upon which a judgment has been rendered since the commencement of proceedings in bankruptcy may be proved. The *debt is not extinguished.* The instrument, contract, or obligation upon which the debt arose is extinguished, but not the debt. The debt remains. If this were not so, the judgment would destroy itself by extinguishing the very foundation on which it is built. The debt was founded on contract; it is now founded on judgment; but it is the same debt. A judgment operates to extinguish a debt only when it produces the fruit of a judgment. It is a security of a higher nature. It is still but a security of a higher nature. It is still but a security for

the original cause of action. The theory that the debt is
so merged as to be extinguished, has no applicability under
the bankrupt act."

Concurring in these views we are content to rest our de-
cision upon the clear and forcible reasoning by which they
are supported. We do not wish however to be understood
as holding that the voluntary execution of a note in place
of a previous liability, would not exclude the claim from
the class of provable debts, as well as exempt it from the
operation of the discharge. This being the substitution of
a new security by the act of both parties, such would un-
doubtedly be the result. Our opinion is confined to the
case of a debt reduced to judgment, and the facts before us.
It will not be denied that the release obtained after judg-
ment, may be pleaded in opposition to the plaintiff's mo-
tion, or indeed any good and sufficient cause growing out
of matters since its rendition, shown why execution should
not issue. We do not see why the present defence may
not be set up for the same reason. If the debt has been
discharged, surely a Court will not lend its aid to en-
force it.

Difficulties have presented themselves in the attempt to
get the benefit of the discharge, in cases where judgments
had before been recovered and execution could be taken
out, in consequence of there being no opportunity to plead
it. In New York, the Court suggests that a remedy may be
had by application to the Court wherein the judgment was
rendered for an order to stay execution perpetually, or to
stay it until the plaintiff bring a new action on his judg-
ment, and give the defendant an opportunity to plead.
But it is unnecessary to consider this, because here the
plaintiff is compelled to come into Court and ask leave to
issue his execution, and the defendant thus has opportu-
nity afforded him to show cause in opposition. We are
therefore relieved of any difficulty of this kind. As the

discharge does operate upon the debt ascertained by the judgment, it is in our opinion competent for the defendant to avail himself of it in this way.

But a more serious aspect of the matter arises out of the long delay following the defendant's neglect to take advantage of the terms of the act in obtaining relief, and it is insisted that this laches should deprive him of the benefit of the discharge. Eight years have elapsed since the judgment was entered up, and if the defendant has delayed in seeking his release, the plaintiff has also waited and made no attempt meanwhile to enforce his judgment. *Positive* action was necessary on the part of the plaintiff, for without it no opportunity was given him. He may have supposed that the plaintiff, by his long acquiescence, was assenting to the efficient operation of the discharge in working out its proper results, and therefore no movement on his part was required. Why should there be needless litigation—and why should defendant believe the plaintiff ever intended to enforce his debt? His conduct was reconcilable only with the idea of a silent self-adjustment, without the intervention of pleading or of process. But as soon as the plaintiff wakes up and shows his intent to enforce his demand, he puts in operation the very machinery which lets in the defence.

In *Pugh* v. *York*, 74 N. C., 383, the defendant was allowed to plead his discharge two years after it was granted, and the Court in answer to the objection of the long delay said : "Apt time sometimes depends upon lapse of time, as when a thing is required to be done at the first term, or within a given time, it can not be done afterwards. But it more usually refers to the *order of proceeding* as *fit* or *suitable*. *No time* is prescribed within which a discharge in bankruptcy is to be pleaded."

So in *Falkner* v. *Hunt*, 76 N. C., 202, the defendant was allowed to plead his discharge more than six years after-

wards, and this Court affirmed the order, declaring that the Judge had power to make it, and that there was "nothing to show, and it certainly is not to be presumed that he exercised an arbitrary or capricious discretion."

In the present case the defence is interposed at the first moment when it could be done, except by action initiated by the defendant himself, and this was not required so long as the plaintiff himself permitted the matter to rest. We are therefore of opinion that the discharge may be pleaded and bars the plaintiff's right to have execution.

No error                         Judgment affirmed.