LEONARD, Appellant, vs. YOHNK and another, Sheriff, etc., Respondents.

*March 23 — April 12, 1887.*

*Bankruptcy: Discharge: Judgment obtained pending proceedings: Injunction: Jurisdiction.*

1. The granting of a discharge in bankruptcy is conclusive that any delay occurring in the proceedings was sufficiently excused.

2. A discharge in bankruptcy operates to release a judgment obtained against the bankrupt, pending the bankruptcy proceedings, upon a claim which was proved or provable therein, as well as the claim itself, and the creditor cannot enforce such judgment against the bankrupt's after-acquired property.

3. Such a claim, which has been proved in the bankruptcy proceedings, does not become merged in such judgment, and the subsequent filing of the judgment is but a re-filing of the same claim.

4. A bankrupt, against whom a judgment so obtained is sought to be enforced by execution, is not bound to seek his remedy by motion for a stay of proceedings in the suit in which the judgment was rendered, as provided by sec. 5106, R. S. of U. S., but may, before obtaining his discharge, bring an action in equity to restrain proceedings on execution under such judgment; and, after obtaining his discharge, may obtain leave of court to file a supplemental complaint setting up the discharge, and obtain a perpetual injunction against such proceedings.

APPEAL from the Circuit Court for *Eau Claire* County. The facts will sufficiently appear from the opinion.

*W. P. Bartlett,* for the appellant, argued, among other things, that the plaintiff had the right to commence this action and to enjoin the defendants from enforcing the collection of the judgment in the state court.   3 Bl. Comm. 405; 1 High on Inj. sec. 296; Story's Eq. Jur. secs. 862, 874–5, 887; *Turner v. Gatewood,* 8 B. Mon. 613; *Garlick v. McArthur,* 6 Wis. 450; *Merritt v. Baldwin,* id. 439; *Brown v. Parker,* 28 id. 21; *United B. Church v. Vandusen,* 37 id. 54.   If the defendant *Yohnk* had not entered judgment in the state court before proving his claim, there could not be any claim that his debt was not released by the discharge.   *Thomas v. Jones,* 39 Wis. 124; *Davis v. McCurdy,* 50 id. 569; *Curtis v. Woodward,* 58 id. 499.   This judgment does not constitute a new debt, and the discharge releases the plaintiff from the claim upon which such judgment was entered and from the judgment.   Freeman on Judgments, secs. 244, 245; *Ruckman v. Cowell,* 1 N. Y. 505; *Clark v. Rowling,* 3 id. 216; *Monroe v. Upton,* 50 id. 593; *Blumenthal v. Anderson,* 91 id. 171; *Hubbell v. Cramp,* 11 Paige, 310; *Arnold v. Oliver,* 64 How. Pr. 452; *Anderson v. Anderson,* 65 Ga. 518; *McLendon v. Turner,* id. 577; *Harrington v. McNaughton,* 20 Vt. 293; *Downer v. Rowell,* 26 id. 397; *Root v. Espy,* 93 Ind. 511; *McDonald v. Ingraham,* 30 Miss. 389; *Bostwick v. Dodge,* 2 Doug. 331; *Stratton v. Perry,* 2 Tenn. Ch. 633; *Blair v. Carter's Adm'r,* 78 Va. 621; *Dawson v. Hartsfield,* 79 N. C. 334; *Sanderson v. Daily,* 83 id. 67; *Oliphant v. Eckerley,* 36 Ark. 69; *Widner v. Yeast,* 32 Kan. 400; *Ewing v. Peck,* 17 Ala. 339; *Imley v. Carpentier,* 14 Cal. 173; *Palmer v. Hussey,* 119 U. S. 96; *Bramman v. Snider,* 21 Fed. Rep. 871; *In re Stansfield,* 16 Nat. Bankr. Reg. 268.

*T. F. Frawley* and *V. W. James,* for the respondents, contended, *inter alia,* that the original debt was merged

and extinguished in the judgment, and the judgment was not provable against the estate of the bankrupt nor affected by his discharge. This is so (1) for the reason that such merger takes effect by the rules of the common law, and (2) because the creditor, by proceeding to take judgment, is held to have elected to look to the debtor personally and to have abandoned all right to the estate of the debtor. And the debtor, on the other hand, may protect himself by moving in the court in which the action is brought against him, for a stay of proceedings until he can obtain a certificate of discharge and plead the same. If he omits to do so, but suffers judgment to go against him, he is held to have waived the right to set up his discharge against the plaintiff's claim, and the rights of the parties must therefore be governed by the judgment. *Bradford v. Rice,* 102 Mass. 472; *Sampson v. Clark,* 2 Cush. 173; *Woodbury v. Perkins,* 5 id. 86; *Faxon v. Barter,* 11 id. 35; *In re Williams,* 2 Nat. Bankr. Reg. 229; *Brown v. Morange,* 108 Pa. St. 70; *Wise's Appeal,* 99 id. 193; *In re Nebenzahl,* 9 Bened. 243; *Doe v. Childress,* 21 Wall. 642; *Cutler v. Ewans,* 115 Mass. 27; *In re Tooker,* 14 Nat. Bankr. Reg. 35; *Palmer v. Merrill,* 57 Me. 26; *Wolcott v. Hodge,* 15 Gray, 547; *In re Gallison,* 2 Lowell, 72; *Boynton v. Ball,* 105 Ill. 627; *Holbrook v. Foss,* 27 Me. 441; *Fisher v. Foss,* 30 id. 459; *Pike v. McDonald,* 32 id. 418; *Ellis v. Ham,* 28 id. 385; *Uran v. Houdlette,* 36 id. 15; *Steadman v. Lee,* 61 Ga. 59; *Evarts v. Hyde,* 51 Vt. 183; *Miller v. Clements,* 54 Tex. 351; *Burnett v. Waddell,* id. 273; *McCarthy v. Goodwin,* 8 Mo. App. 380; *Carrington v. Holabird,* 17 Conn. 530; *Ewing v. Peck,* 17 Ala. 341; *Holden v. Sherwood,* 84 Ill. 92; *In re Mansfield,* 6 N. B. R. 388; *Gould v. Hayden,* 63 Ind. 443; *Gallaher v. Michel,* 26 La. Ann. 41; 1 Herman on Estoppel, 286; High on Injunctions, 296; *Eyster v. Gaff,* 91 U. S. 521; *Burbank v. Bigelow,* 92 id. 179; *Jerome v. McCarter,* 94 id. 734; *Conner v. Long,* 104 id. 228; *Thatcher v. Rockwell,* 105 id. 467; *Hill v. Harding,*

107 id. 631. As to the general doctrine of merger as bearing upon this case, see, also, 1 Herman on Estoppel, 559; *Ex parte Williams*, 2 Nat. B. R. 83; *Nicholl v. Mason*, 21 Wend. 339; *Town v. Smith*, 14 Mich. 348; Freeman on Judgments, secs. 215–217; *Hogg v. Charlton*, 25 Pa. St. 200; *Wayman v. Cochrane*, 35 Ill. 152; *Conn. Mut. Life Ins. Co. v. Jones*, 8 Fed. Rep. 303; *Ries v. Rowland*, 11 id. 657. That the appellant might have had a stay of proceedings until he could obtain and plead his discharge, and that failing to do so he cannot now avail himself of the discharge to defeat the judgment, see *Ruszits v. Hilliard*, 57 Vt. 60; Bump on Bankr. (9th ed.), 680; *Brown v. Stevens Co.* 52 Conn. 110; *Palmer v. Merrill*, 57 Me. 26. The plaintiff should not be granted the relief now asked, because of his unnecessary and unreasonable delay in applying for his discharge. Freeman on Judgments, 102, 502; *Brooks v. Bates*, 7 Colo. 576; *Calvert v. Peebles*, 80 N. C. 334; *Hair v. Lowe*, 19 Ala. 224; *Mastick v. Thorp*, 29 Cal. 444; *Hibbard v. Eastman*, 47 N. H. 507; *Menifee v. Myers*, 33 Tex. 691; *Yancy v. Fenwick*, 4 Hen. & M. 423; *Jevne v. Osgood*, 57 Ill. 340; *Medbury v. Swan*, 46 N. Y. 200; *Sandford v. Sinclair*, 3 Denio, 269; *Valkenburgh v. Dederick*, 1 Johns. Cas. 134; *De Sobry v. Morange*, 18 Johns. 336; *In re Ferguson*, 2 Hughes, 286.

ORTON, J. The plaintiff, by his first complaint, alleged as follows: The firm of Leonard, French & Giddings, of which the plaintiff was a member, was indebted to the defendant *Yohnk* in the sum of about $2,400, and on the 7th day of December, 1869, *Yohnk* commenced an action thereon against said firm in the circuit court of Eau Claire county. On the 13th day of December, 1869, the said firm filed their petition in bankruptcy, and were declared bankrupts accordingly, and afterwards the said *Yohnk*, with the other creditors of said firm, filed and proved said claim against the bankrupt estate, as it was provable according to the

bankrupt law.   On January 7, 1870, the said *Yohnk* obtained a judgment in the above action against said firm by default for the sum of $2,426.76, and afterwards filed and proved said judgment as a provable claim against said bankrupt estate.   On the 23d day of February, 1886, *Yohnk* caused an execution to be issued on said judgment, and thereafter the said defendant *Cosgrove*, as sheriff, levied the same upon certain property belonging to the said plaintiff, and which he had acquired since the commencement of said bankruptcy proceedings, to satisfy said execution, and advertised the same for sale.   On the 26th day of February, 1886, the plaintiff petitioned the bankrupt court for a discharge in said bankruptcy, and an order to show cause why he should not be so discharged was entered to be heard on the 21st day of June thereafter, and the same was duly served upon said *Yohnk*.   Thereupon this action was brought by the plaintiff to enjoin the proper parties from proceeding further under said judgment and execution, and such an injunction was granted.

On the 24th day of June, 1886, the plaintiff obtained his discharge in said bankruptcy in due form of law, and thereupon, by a rule to show cause, moved the court for leave to file a supplemental complaint in said action, setting up said discharge and praying a perpetual injunction of any proceedings on said judgment and execution.   In the meantime the defendants had filed a demurrer to said first complaint on the ground of want of jurisdiction and of no cause of action.   Both the motion and the demurrer were heard at chambers, and the motion was denied, and the demurrer sustained.   From the orders of the circuit court refusing to set aside the orders so denying the motion and sustaining the demurrer, this appeal is taken.

The facts of this case raise the question which is in such irreconcilable conflict in the state courts.   In the following states it is held that by a subsequent discharge in bank-

ruptcy, if a judgment is obtained by a creditor upon a claim provable under the bankrupt law, in an action commenced before or after the commencement of the bankruptcy proceedings, and pending such proceedings, the bankrupt is discharged from the judgment itself, the same as from the claim upon which it was founded: New York, Georgia, Vermont, Indiana, Michigan, Mississippi, Tennessee, Virginia, North Carolina, Arkansas, Kansas, Alabama, California, and perhaps some other states. In Massachusetts and Illinois and some other states it is held that such a judgment is not affected by the discharge. It is contended by the learned counsel of the respondent that many of the cases in which it is held that both the judgment and the claim are barred by the discharge arose under the bankrupt law of 1841, which did not contain the provision requiring the state court to stay proceedings in such a case before judgment, upon the application of the bankrupt, found in the bankrupt law of 1867, in sec. 5106, R. S. of U. S. But it is significant that the same conflict of decisions upon this question still exists, notwithstanding this new provision. This provision imposes a duty upon the state courts, which they may or may not discharge, notwithstanding its *imperative* language: "And any such suit or proceeding *shall* upon the application of the bankrupt *be stayed*, to await the determination of the court in bankruptcy on the question of the discharge, provided there is no unreasonable delay on the part of the bankrupt in endeavoring to obtain his discharge." The reason for this provision, given by the learned judge who wrote the opinion in *Boynton v. Ball*, 105 Ill. 634, was "to prevent a judgment which the discharge might not relieve the bankrupt from, as held by the courts of Maine and Massachusetts," etc. This reason evidently comes from a desire to sustain the ruling of the Illinois courts upon the main question. If there had been no conflict in the decisions of the various courts of this

country under the law of 1841 against the rule that such intermediate judgment is not released or affected by the discharge, and all courts had agreed with the supreme court of Illinois, there might be some ground for the reason given. But when Congress must have been aware that there was a preponderance of the weight of authority in this country, and that the decisions of the English courts were uniform, against such a rule, such a reason for the provision could have had but little weight. A far better reason would have been, and probably was, that the bankrupt, after his discharge, might not be put to the trouble and expense of relieving his subsequently acquired property from the lien of, and a threatened seizure under, intermediate judgments, obtained in violation of the bankrupt law, pending his bankruptcy proceedings. This provision makes it easier and less expensive to prevent such judgments and the threatened mischief, than to set them aside after such mischief had been wrought.

It may be well to consider briefly the effect of this new provision. Under the law of 1841 the bankrupt certainly had the right to go into the state court and ask for a stay of the proceedings on the same ground; and such court had the power and discretion to stay the proceedings if there had been no unreasonable delay in obtaining his discharge. Neither the bankrupt nor the state court can do anything more now under this provision. The pendency of the bankrupt proceedings would have been no *defense* to the action then, and it is no *defense* now. The proceeding is only dilatory and discretionary at most. If the bankrupt could thereby absolutely prevent a judgment from being rendered, it would be different and quite effectual. But, as it is, the remedy is quite inadequate. There are two previous provisions that ought to be and are more effectual. The first is applicable in all respects to this case: "No creditor proving his debt or claim shall be allowed to maintain any

suit at law or in equity therefor against the bankrupt, but shall be deemed to have waived all right of action against him; and all proceedings already commenced, or unsatisfied judgments already obtained, against the bankrupt, shall be *deemed to be discharged and surrendered thereby.*" Sec. 5105, R. S. of U. S. In this case the suit was commenced before the proof of the debt in bankruptcy. "In such a case the proving of the debt operates as a surrender, *ipso jure*, of the action, and is a *bar* to any further proceedings in the suit." Bump, Bankr. 684; *Everett v. Derby*, 5 Law Rep. 225. The other provision is as follows: "No creditor whose debt is provable *shall be allowed* to prosecute to final judgment any suit at law or in equity therefor against the bankrupt until the question of the debtor's discharge shall have been determined." [Sec. 5106.] These provisions together contain *prohibitions* against the creditor maintaining or prosecuting any such action to judgment, and it is therefore *unlawful* for the creditor to do so. Such judgments are obtained in violation of the bankrupt law. Now, what is the result if the creditor shall, notwithstanding such prohibition, maintain or prosecute such an action to judgment, or if the state court should see fit to deny, as it may, such application for a stay of proceedings? Are the judgments so obtained nevertheless valid, effectual, and conclusive? If so, then these provisions are nugatory and of no force or effect whatever. These provisions do not affect, and were not intended to affect, the jurisdiction of the state courts in such actions; but they do affect, and were intended to affect, the conduct of the creditor. He has proceeded in violation of law. As to him the judgment ought not to be effectual against the proceedings and discharge in bankruptcy. He was prohibited by the law from obtaining judgment. He is prohibited, by the spirit and effect of the same law, from availing himself of such judgment by enforcing it, by execution or otherwise, against the discharge in bankruptcy. This would seem

to be the proper effect of these provisions. If in the event the bankrupt fails to obtain his discharge, then he is not injured. If he obtains his discharge, then he may assert it as against the judgment so unlawfully obtained.

But I have wandered sufficiently in attempting to discover the reason of the provisions. Their effect is not remedial. They cannot be interposed as a defense to the action. In view of them the state court may stay the proceedings or may refuse to do so. Not so, however, as to judgments obtained after the discharge in bankruptcy. In such cases the discharge may be pleaded in bar of the actions, or as a complete defense. That class of cases, therefore, which holds that such judgments are conclusive, is inapplicable to this case. It is conceded in the opinion in *Boynton v. Ball, supra,* that the English authorities are uniform upon this question that such a judgment is released by the subsequent discharge, but it is said that the English courts are forced to so hold by the provision of the English bankrupt law that if the debtor is arrested on execution he may be discharged on motion. A broader provision than that is found in the law of 1867, which is that the debtor shall not be liable to arrest in any such action (sec. 5107, R. S. of U. S.), and, if arrested, it follows of course that he may be discharged.

The legal effect of the proceedings in bankruptcy and of the discharge upon pending actions by the creditors upon proved and provable claims, and upon intermediate judgments, would seem to present a federal question, for the authoritative decision of the federal courts. I have been unable to find any case in point decided by the supreme court of the United States, except the late case of *Palmer v. Hussey,* 119 U. S. 96, in which the judgment of the court of appeals of New York, giving such effect to a subsequent discharge in bankruptcy upon an intermediate judgment of the supreme court of that state, is affirmed. That case was

much like the present one. Hussey filed his petition on the 20th day, and was adjudicated a bankrupt on the 24th day, of January, 1868. On the 18th day of April, 1874, Palmer obtained a judgment against Hussey for about $22,000, upon a claim which was finally determined to have been provable in the bankruptcy, in a suit commenced the 7th day of September, 1868. On the 17th day of May, 1880, Hussey obtained his final discharge, and on the 12th day of June, 1880, he moved the supreme court of· New York to perpetually enjoin the collection of the judgment because of such discharge. That court denied the motion, on the ground that the debt on which the judgment was obtained was not such a one as could be released by the discharge in bankruptcy. The court of appeals reversed this order, and held the judgment released, in accordance with the uniform decisions of that court since *Clark v. Rowling,* 3 N. Y. 216, after holding that such debt was one provable under the bankrupt law and which was released by the discharge, and the execution of the judgment was perpetually enjoined. On writ of error the supreme court affirmed the judgment of the court of appeals. One of the federal questions raised in the case was as to the fraudulent and fiduciary character of the debt, and the other was as to the delay in obtaining the discharge. As to the last question, the court said: "By sec. 5119 of the Revised Statutes, the certificate of discharge is made conclusive evidence, in favor of the bankrupt, of the fact and regularity of such discharge. We must presume, therefore, that the application was made within the time required by sec. 5108, or, if not, that any delay there may have been was satisfactorily explained before the discharge was granted. The certificate is conclusive on that question."

It is claimed by the learned counsel of the respondent that the question whether the judgment could be affected by the discharge according to the statute was not raised or

discussed in the case in any of the courts. That may be, but that question was directly involved in the case, and it was probably thought useless to question the uniform decisions of the court of appeals upon it. If the supreme court of the United States entertained any different view of that question from the court of appeals, it would have been mentioned, as it would have caused a reversal of the judgment on that ground alone. That court adopted, *sub silentio,* the ruling of the courts of New York upon that question, by affirming the judgment. What was the use of disposing of the question of laches or delay in obtaining the discharge, if the discharge itself could have no such effect under any circumstances? If the counsel of the plaintiff in error in that case had supposed that the supreme court would hold differently on that question from the court of appeals, that court would have been asked to reverse the judgment on that ground, because that federal question also was directly involved in the case, and the effect of the discharge upon the judgment was involved in the question of delay in obtaining it.

In *Braman v. Snider,* 21 Fed. Rep. 871 (in the United States district court for the district of Minnesota), a case of similar facts, Judge NELSON held that "the doctrine of merger and extinguishment of the debt, and that the judgment constitutes a new debt from the time of its recovery, is not applicable under the bankrupt act." A similar decision was made by the United States district court for the district of Nevada in *Re Stansfield,* 16 N. B. R. 268.

The decisions against this effect of the subsequent discharge to release the intermediate judgment under the law of 1867 have been in part based upon the provision of the law that allows the bankrupt to apply for a continuance of the action until he obtains his discharge. It is said in one of the leading cases supporting this doctrine,— in *Bradford v. Rice,* 102 Mass. 472,— that the same proceeding was

taken as a rule of practice under the law of 1841, and that therefore the same doctrine prevailed in many of the states under the law of 1841; and so strongly did this reason prevail in Massachusetts that in *Haggerty v. Amory*, 7 Allen, 458, in an action upon a judgment rendered in the courts of New York after the commencement of proceedings in bankruptcy under the bankrupt law of 1841, it was held that the discharge might be pleaded as a defense, because that rule of practice did not prevail in the courts of New York. This is hardly consistent with the other reason given (which is a mere fiction or technicality) for holding that the judgment is unaffected by the discharge, which is that the debt, which would have otherwise been released by the discharge, is merged or lost in the judgment, and that the judgment constituted a new debt, pending the proceedings in bankruptcy, which could not be so released. If that reason be a good one, then the judgment so rendered in New York is no more released than if it had been rendered in any other state.

The opposite rule is founded on better reasons. They are stated, perhaps, fuller and more satisfactorily in *Dawson v. Hartsfield*, 79 N. C. 334, than in any other case, and they commend themselves to our judgment. (1) The bankrupt law, and the oath required of the creditor to prove his claim, show that it is the debt itself, in whatever form or however evidenced, which is affected by the discharge. (2) The *consideration* must be inquired into in order to ascertain whether the debt is provable, or of such a nature as to prevent a discharge (as in *Palmer v. Hussey, supra*). (3) The judgment is no more evidence of a new debt, in such a case, than a bond, promissory note, or some other evidence of debt into which the original debt was merged, and no more extinguishes the debt. It is the *date* of the demand and not the subsequent judgment on it that must determine whether the creditor was an *existing* one when an assignment or

other transfer was made, so as to be allowed to attack it for fraud. (4) It is within the spirit and equity of the law to regard only the debt and not its form. (5) The opposite rule is narrow, technical, and absurd, and would defeat the objects of the law. These reasons are stated at length by great strength of language and by apt illustration.

In *Dresser v. Brooks*, 3 Barb. 429, it is said: "The consequence of adopting the strict and narrow construction of holding a judgment exempt from the operation of a discharge because the debt exists in a different form and under a different name would, in the case of a bankrupt whose debts were numerous, utterly defeat the benign object of the act, and leave the unfortunate bankrupt subject to a great portion of his debts after every dollar of his estate had been faithfully devoted to their payment."

It might be added to these reasons, that if one creditor whose debt was provable under the bankrupt law could bring an action on it and cause it to be so changed by a subsequent judgment upon it as to be exempt from the operation of the discharge, they may all of them take the same course, and none of them be left to give effect to the proceedings or the discharge, and the bankrupt would be defeated in trying to take the benefit of the act. And, again, if even they might be stayed in these actions upon the application of the bankrupt, he would, pending his bankruptcy, be harassed by a multiplicity of suits, here and everywhere, and suffer great expense in money and hardship and care and labor, and his whole time and attention be employed in seeking to stay the proceedings,— a trouble and embarrassment not only not contemplated, but actually *prohibited*, by the act.

It is well said in Bump's Law & Practice in Bankruptcy (6th ed.), 411: "A debt upon which a judgment has been rendered since the commencement of proceedings in bankruptcy *may be proved*. The *debt is not extinguished*. The instrument, contract, or obligation upon which the debt

arose is extinguished, but not the debt.   The debt remains. If this were not so, the judgment would destroy itself by extinguishing the very foundation on which it is built.  The debt was founded on contract; it is now founded on judgment; but it is the same debt.  . . .   The theory that the debt is so merged as to be extinguished has no applicability under the bankrupt act."

I have referred specially to only a few of the decisions of this question cited by the learned counsel on both sides, which, however, will be preserved in their able briefs.  But I think it may be safely said that the decided weight of authority, both in number and reason, is upon the side of the appellant.   It being a federal question arising under a law of Congress, the above decision of it by the supreme court and other federal courts is of the highest authority, if not binding.   The intimation of Mr. Justice GRAY, in *Hill v. Harding*, 107 U. S. 631, and the decisions of the circuit court for the district of Massachusetts, have clearly been induced by the uniform decisions of the courts of that state.  The cases cited from the United States Reports by the learned counsel of the respondents are not applicable.

The question of delay in procuring the discharge can cut no figure in this case.   That question was disposed of by the bankrupt court on granting the discharge, which is conclusive evidence that the delay, if any, was sufficiently excused.  *Palmer v. Hussey, supra*.   In that case there was nearly the same delay in obtaining the discharge as in pressing the judgment.   In this case the plaintiff filed his bill and obtained an injunction just as soon as the defendant *Yohnk* attempted to enforce his judgment by execution, and then obtained his discharge without delay.   What was said in *Dawson v. Hartsfield, supra*, is appropriate here: " Eight years have elapsed since the judgment was entered up; and if the defendant has delayed in seeking his release, the plaintiff has also waited, and made no attempt mean-

while to enforce his judgment. *Positive* action was necessary on the part of the plaintiff; for without it no opportunity was given him. He may have supposed that the plaintiff, by his long acquiescence, was assenting to the efficient operation of the discharge in working-out its proper results, and therefore no movement on his part was required. Why should there be needless litigation — and why should the defendant believe the plaintiff ever intended to enforce his debt? His conduct was reconcilable only with the idea of a silent self-adjustment, without the intervention of pleading and process. But as soon as the plaintiff wakes up and shows his intent to enforce his demand, he puts in operation the very machinery which lets in the defense."

In this case the judgment was rendered in 1870, and the execution was issued in 1886. There are peculiarities in this case that ought to be noticed. The defendant *Yohnk* filed his claim in the bankrupt court before he obtained judgment upon it. By so doing he is deemed to have waived all right of action against the bankrupt, and was not allowed to maintain any suit upon the claim, by sec. 5105, R. S. of U. S. See, also, *White v. Crawford*, 9 Fed. Rep. 371. But, not content with this submission to the bankrupt court, *Yohnk* filed his judgment also, after he had obtained it by default. The learned counsel contends, and cites some authorities to show, that the filing of the judgment was a nullity, and does not estop *Yohnk* from otherwise enforcing it. It is said by Freeman, in his tract on the Enforcement of Judgments against Bankrupts, that "the authorities preponderate in favor of the position that the taking of the judgment pending proceedings in bankruptcy does not prevent the plaintiff from proving his claim against the bankrupt estate," and the author cites many authorities to that effect. The disagreement is as to whether, in such a case, any of the costs may be included. But the effect of such filing as a waiver of his right to enforce the

judgment upon the bankrupt's after-acquired property cannot be reasonably questioned. Such an act, in such a case, seems to me to be of the very essence of an estoppel. The creditor should not be allowed so to play fast and loose between the bankrupt court and the state court, and "blow hot and cold" in the same proceeding. *Allegans contraria non est audiendus.* The creditor in this way influences the action of the bankrupt court, and affects the rights of other creditors as well as of the bankrupt. 1 Freem. Estop. 2. But in the view we have taken of the effect of the judgment, the filing of the judgment was but a refiling and an insisting upon the same claim in the bankrupt court, and it operates as a concession that it is the same claim or debt, notwithstanding the judgment.

The only remaining material question is one of jurisdiction,—whether the plaintiff was not bound to seek his remedy by motion in the same case in which the judgment was rendered; or, in other words, whether the plaintiff had not in that way a complete remedy at law. In the first place, this objection to the action does not go strictly to the jurisdiction of the court. It is a mere rule of practice that courts of equity will not entertain jurisdiction when there is a complete remedy at law. It may be that the same remedy here sought might have been obtained by motion in that case; but the remedy need not be sought by motion, unless the facts appear on the record. If any facts are to be established by extrinsic evidence, then the suit in equity may be maintained. *McIndoe v. Hazelton,* 19 Wis. 567. In this case the whole matter of the bankruptcy and the discharge are extrinsic of the record. By the authority of that case, also, if the plaintiff has shown by his complaint that he will suffer any injustice by the levy of the execution and the sale of his property under it, he is entitled to equitable relief. It was not only proper, but necessary, that the further proceedings under the execution should be enjoined

until the discharge in bankruptcy could be obtained, and therefore the complaint was not demurrable. It was certainly as proper to file a supplemental complaint on the happening of that event, in order to obtain a perpetual injunction of any proceedings under said judgment or other proper relief against the same. One of the objects of a supplemental bill, or a supplemental amendment of the original bill, is " when new events, referring to and supporting the rights and interests already mentioned, have occurred subsequently to the filing of the original bill." Story, Eq. Pl. 336; Mitf. Ch. Pl. 55, 61, 325.

I have given more space to this opinion, because the main questions are in conflict in other courts, and new in this court, and very important.

*By the Court.*— The order denying the motion to set aside and vacate the order sustaining the demurrer to the complaint, and the order denying the motion to set aside and vacate the order denying the plaintiff leave to serve the supplemental complaint, are both reversed, and the cause remanded for further proceedings according to this opinion.